IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN LOOMIS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 06 CV 4900 |
| ) | |
| v. ) | Hon. John W. Darrah |
| ) | |
| EXELON CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Exelon Corporation; William Bergman, in his capacity as Exelon Corporation's Director of Employee Benefit Plans and Programs; Compensation Committee of Exelon Corporation's Board of Directors; M. Walter D'Alessio, Rosemarie B. Greco, Ronald Rubin and Richard L. Thomas, all in their capacities as members of the Compensation Committee; Employee Savings Plan Investment Committee; Risk Oversight Committee of the Exelon Corporation Board of Directors; and Sue Ling Gin, Judge Nelson A. Diaz, Edgar D. Jannotta, William C. Richardson, Ph.D., John W. Rogers, Jr. and Ronald Rubin, all in their capacities as members of the Risk Oversight Committee (collectively, "Defendants") submit this memorandum in support of their Rule 12(b)(6) motion to dismiss.

### **Introduction**

This action arises out of a 401(k) plan offered by Defendant Exelon. As Plaintiffs allege, there are at least two components that affect the value of a participant's account in a 401(k) plan: the investment performance of the plan options and the administrative expenses charged by the plan's service providers. This lawsuit is not about the investment performance component; it is

solely about the administrative expense component. Defendants bring this motion, though, because Plaintiffs are seeking to recover damages relating to investment performance even though their claim relates solely to administrative expenses.

This lawsuit was filed against Exelon and certain of its employees and directors. There are virtually no specific allegations relating to the Exelon plan, and the reason this is so is because this is a generic, cookie-cutter complaint – this case is one of at least ten similar ERISA lawsuits recently brought by the same law firm against large corporate defendants.[1] All of these lawsuits purport to be brought on behalf of a class of participants in 401(k) plans, and each alleges that the defendants breached their fiduciary duties by failing to monitor, control and disclose the administrative expenses that the plan and participants paid to third-party service providers. None of these lawsuits alleges any specifics about the plan expenses; they are all phrased generically.

As in the other lawsuits, the gist of Plaintiffs' claim is that Defendants breached their fiduciary duties by failing to adequately disclose, and allowing unspecified third parties to charge, allegedly excessive fees, thereby causing damage to participants. As part of the equitable relief they are seeking under ERISA, the lawsuit seeks recovery of two different types of monetary relief: (1) direct losses, meaning the ones Plaintiffs "experienced as a direct result of the Defendants' breaches of fiduciary duty," which in this case means the losses resulting from the excessive fees Plaintiffs claim to have paid, and (2) investment losses, by which

---

[1] The other cases are: *Taylor v. United Technologies Corp.*, No. 06-CV-01494 (D. Conn. 2006); *Beesley v. International Paper Co.*, No. 06-703-DRH (S.D. Ill. 2006); *George v. Kraft Foods Global, Inc.*, No. 06-798-DRH (S.D. Ill. 2006); *Abbott v. Lockheed Martin Corp.*, No. 06-701-MJR (S.D. Ill. 2006); *Will v. General Dynamics Corp.*, No. 06-698-WDS (S.D. Ill. 2006); *Spano v. Boeing Co.*, No. 06-cv-0743-JLF (S.D. Ill. 2006); *Kanawi v. Bechtel*, No. 06-5566 (N.D. Cal. 2006); *Waldbusser v. Northrop Grumman Corp.*, No. 06-cv-06213-R-JC (C.D. Cal. 2006); *Martin v. Caterpillar, Inc.*, No. 06-cv-04208-SOW (W.D. Mo. 2006).

2

Plaintiffs apparently mean losses attributable to the ups and downs of the financial markets. *See* Compl. ¶¶ 96-97. This motion is directed at the second form of monetary relief – the claim for investment losses.

In seeking to require Defendants to reimburse participants for any and all investment losses they have incurred from their 401(k) investment selections, Plaintiffs are not seeking to recover losses that may have been caused by the alleged breach of fiduciary duty relating to administrative fees, but instead appear to be trying to turn the Plan's fiduciaries into insurers against losses in the stock market. ERISA does not permit such a windfall claim. On the contrary, the Seventh Circuit has made clear that ERISA claimants are only entitled to pursue damages that were caused by the breach, not any losses a participant might have sustained *in connection with* an investment. *See* 29 U.S.C. 1109(a); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982). Because the complaint fails to allege any nexus whatsoever between the administrative fees charged to participants and their market-based losses, the investment loss claim should be dismissed.

Plaintiffs, however, appear to claim that they do not need to allege causation because, by failing to adequately disclose the administrative fees, Defendants automatically become liable for any investment losses by virtue of section 404(c) of ERISA, 29 U.S.C. § 1104(c). But the Seventh Circuit also has rejected this precise argument, holding instead that section 404(c) is merely a safe harbor from liability, and does not automatically impose liability for investment losses on fiduciaries that do not qualify for the safe harbor protection. *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006). Instead, the Seventh Circuit has made clear that investment losses are recoverable only if the traditional elements of a breach of fiduciary duty claim, including

3

causation, are properly alleged. Thus, Plaintiffs cannot use section 404(c) to salvage their deficient claim for investment losses; the claim should still be dismissed.

Nor is this dismissal simply a minor pleading matter. The claim for investment losses is brought solely for *in terrorem* effect. *Cf. Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Well aware that even a successful claim for excessive fees would net only a modest recovery, Plaintiffs are hoping to force a settlement by placing at issue the potentially larger amounts that participants may have lost on investments in the stock market. This is the same sort of "groundless claim" that the Supreme Court rejected in *Dura*. In addition, if permitted to proceed, this claim would radically expand the scope of discovery by requiring extensive inquiry into the performance of the available investment options and the reasons for any downturn in performance. This Court should intervene to prevent these outcomes now.

## **Factual Allegations**

Plaintiffs are participants in Exelon's 401(k) plan. Compl. ¶ 17. The 401(k) plan "provides an opportunity for employees to save their own pre-tax dollars in individual 401(k) accounts." *Id.* ¶ 2. In the case of the Exelon Plan, contributions are made not only by employees, but also by Exelon, which matches employees' contributions in varying percentages. *Id.* ¶ 31. Under the Plan, employees can select from among a broad range of options the particular funds in which their 401(k) accounts are invested. The money in the 401(k) accounts is invested in the funds designated by the employee and the employee's account is credited with the returns earned by those investments. *Id.* ¶ 33. Like any investment, the investment returns earned by participants in the 401(k) plan are subject to a variety of external market forces and factors that may affect performance, including "generalized market fluctuations." *Id.* ¶ 6. The value of participants' accounts also are reduced by the amount of any administrative fees and

4

expenses paid by the Plan. *Id.* ¶ 4. Thus, as Plaintiffs acknowledge, two distinct factors affect the benefits provided to 401(k) participants: the investment return of the selected funds and the amount of any administrative fees and expenses. *Id.* ¶¶ 4 & 6.

Plaintiffs allege that Defendants (they do not say which ones) caused the Plan to purchase various administrative services from third-party providers. *Id.* ¶¶ 7, 53. In this lawsuit, they are challenging the reasonableness of the fees paid to these providers. The complaint divides the fees into two forms: (1) direct payments to service providers, which the complaint refers to as "hard dollar" payments, *id.* ¶¶ 56-58, and (2) indirect payments through the expense ratios charged by mutual funds (or other investment managers), *id.* ¶¶ 62-67, which the complaint calls "revenue sharing." *Id.* The complaint alleges that Defendants, all of whom are alleged to be fiduciaries of the Plan, failed to monitor and control the fees paid to third-party administrative service providers and failed to tell participants what portion of the fully-disclosed expenses charged by the Plan's investment funds were then remitted to the Plan's administrative service providers. Due to this conduct, Plaintiffs allege, "the fees and expenses paid by the Plan, and thus borne by Plan participants, were and are unreasonable and excessive; not incurred solely for the benefit of the Plan and its participants; and undisclosed to participants." *Id.* ¶ 11.

Plaintiffs seek multiple forms of relief, two of which are monetary. First, Plaintiffs allege that "Defendants are liable to restore to the Plan the losses it experienced *as a direct result of* the Defendants' breaches of fiduciary duty." *Id.* ¶ 97 (emphasis added). Second, Plaintiffs allege that, because Defendants failed to disclose adequate information about the fees to participants, Defendants do not qualify for a "safe harbor" provision of ERISA that protects fiduciaries from liability for plan losses, and that therefore "the Defendants are liable for participants and

5

beneficiaries' investment losses in the Plan." *Id.* ¶ 96. This means, for example, that if an equity mutual fund declined in value, Plaintiffs claim that Defendants have to repay those losses.

## Argument

This motion does not challenge Plaintiffs' claim for "direct" losses, *i.e.*, administrative fees or expenses that Plaintiffs can establish were unreasonable. Instead, it challenges losses that Plaintiffs do not allege were caused, directly or indirectly, by any breach of fiduciary duty. Compl. ¶ 96. Specifically, Plaintiffs claim that Defendants are liable not only for any excessive fees, but also for any and all "investment losses" that participants may have experienced in their 401(k) accounts. They allege that "the Defendants failed to provide participants and beneficiaries with sufficient investment information to qualify for the Safe Harbor protection of ERISA § 404(c), 29 U.S.C. 1104(c)," and as a result, they claim Defendants are automatically liable – apparently without regard to causation – for participants' investment losses in the Plan. Compl. ¶ 96.

A simple example will put this unprecedented theory in perspective. Assume that participant Q invested $10,000 in investment option X, which charges annual fees equal to 0.50%. This means that participant Q would be charged $50 annually for her investment in option X. But suppose that participant Q proves that the fees she was charged were excessive, and should only have been 0.40%, meaning she should have been charged only $40. According to Plaintiffs, participant Q is entitled to recover not only the losses directly resulting from the $10 overpayment of fees, but also any amounts by which the market value of option X declined. For example, if participant Q's investment in option X declined in value by 30%, so that it was now worth only $7,000, Plaintiffs claim that she is entitled to both her $10 overpayment and the $3,000 she lost by investing in Option X.

Plaintiffs' damages theory is untenable in this case for two reasons: (1) ERISA requires a plaintiff to plead that any alleged losses were causally connected to the alleged breach, and does not permit recovery of any losses that are simply associated with the underlying investment, and (2) the fact that Defendants may not qualify for the ERISA liability "safe harbor" does not change this result. Moreover, the propriety of dismissing Plaintiffs' investment loss claim is reinforced here by the Supreme Court's recent decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Each of these issues is discussed below.

## A. ERISA Limits Recovery to Losses Resulting From the Breach.

Under ERISA, fiduciaries are liable only for losses "resulting from" a breach of their fiduciary duty. 29 U.S.C. § 1109(a). The Seventh Circuit has held that this provision requires a plaintiff to allege that defendant's alleged breach of fiduciary duty caused the alleged losses, and in the absence of such allegations, the claim should be dismissed. *See Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (affirming dismissal of a claim for investment losses because no causal connection was alleged between the breach of fiduciary duty and the losses incurred by the plan). *Accord In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *6 (N.D. Ill. March 3, 2004) (Darrah, J.) (an ERISA plaintiff must allege a causal connection between the breach and the alleged loss). Here, however, Plaintiffs have alleged no connection whatsoever between the allegedly excessive fees and any investment losses in the mutual funds themselves. While it makes sense that Plaintiffs could recover any excessive fees they could prove were charged, Plaintiffs do not and cannot allege how a breach of duty relating to the fees that were charged could have had any impact on any investment losses they sustained. For this reason alone, Plaintiffs' claim for recovery of investment losses should be dismissed.

7

  B. **The Alleged Inapplicability of the ERISA Liability Safe Harbor Does Not Change This Outcome.**

As Plaintiffs point out in the complaint, section 404(c) of ERISA provides a "safe harbor" that immunizes a fiduciary from liability for any investment losses suffered by participants in a 401(k) plan. Compl. ¶ 96. The safe harbor provides that, as long as a plan gives participants control over investing their individual account balances, "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c). To be deemed to have "control" over their investments under Department of Labor regulations, participants must be given certain specified information.

Plaintiffs' theory appears to be that if a fiduciary fails to provide the required information about investment options, and thus does not qualify for the safe harbor, then the fiduciary automatically becomes liable for any and all "investment losses" on participants' investments in the 401(k) plan, without regard to any causation requirement. But the Seventh Circuit has expressly (and recently) rejected this precise theory. In *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006), plaintiffs contended that a fiduciary that does not qualify for the safe harbor protection of ERISA § 404(c), 29 U.S.C. § 1104(c), has, by definition, breached his fiduciary duty and is automatically liable for any investment losses. The *Jenkins* court rejected that argument, observing that "[a]lthough section 404(c) and its accompanying regulation, 29 C.F.R. § 2550.404c-1, create a safe harbor for a trustee, we see no evidence that these provisions necessarily are the only possible means by which a trustee can escape liability for participant-directed plans." *Id.* at 923. The court noted that the Department of Labor, which has substantial regulatory responsibility for ERISA, "also has stated that, for plans that do not meet the regulatory definition of a section 404(c) participant-directed plan, 'noncomplying plans do not

necessarily violate ERISA; noncompliance merely results in the plan not being accorded the statutory relief described in section 404(c).'" *Id.* at 923-24 (quoting 57 Fed. Reg. 46,906, 46,907 (Oct. 13, 1992)).

Instead, the *Jenkins* court evaluated the defendant's responsibility for investment losses under the traditional three-part test for breach of fiduciary duty, including a consideration of whether the breach caused the investment loss. 444 F.3d at 924. In doing so, the Seventh Circuit has made clear that failure to comply with the safe harbor immunity of ERISA § 404(c) is not, standing alone, a breach of fiduciary duty, and does not automatically shift to fiduciaries the liability for any investment losses. Thus, even if Defendants are not entitled to the safe harbor immunity, as Plaintiffs allege, Defendants' responsibility for investment losses depends upon the existence of causation. But because, as shown above, Plaintiffs have failed to allege any casual link between the alleged breach of fiduciary duty and any investment losses in the 401(k) Plan, their claim for investment losses fails.

These principles have particular force here, where Plaintiffs' claims relate solely to information about administrative fees and expenses (and more particularly, whether a portion of fully-disclosed fees were then remitted to administrative service providers), not the market performance of their investment options. Plaintiffs do not allege that Defendants failed to provide prospectuses and other fund documents to 401(k) participants that clearly and comprehensively informed participants about the particular market sector, investment objectives, volatility, and risk factors associated with each investment option. Indeed, Plaintiffs do not allege that they were uninformed about any aspect of their 401(k) investments, other than the particular breakdown of how administrative fees and expenses were allocated to their accounts. Even assuming Plaintiffs are correct, this has nothing to do with the underlying performance of

9

the investment options, and Plaintiffs have failed to allege that any investment losses they experienced were in fact caused by Defendants' alleged failure to provide information.

C.  The Result Here Is Reinforced By *Dura Pharmaceuticals v. Broudo*.

This result is reinforced by Supreme Court precedent on causation issues. The Supreme Court recently confirmed that, even under the liberal standards of the Federal Rules of Civil Procedure, plaintiffs must allege in the complaint a causal link between the alleged wrong and their claimed losses. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court reinstated a district court's dismissal of a securities fraud lawsuit for failure to allege that the defendants' misrepresentations had caused any loss. The Court observed that the securities laws were enacted "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id.* at 345.

Even though *Dura* arose in the context of a securities claim, it is instructive here because the Court discussed the pleading requirements for causation in general, not just for securities claims. *Id.* at 346. The Court acknowledged that Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" but reiterated the corollary that "the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Dura*, the complaint failed to identify "what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation." *Id.* at 347. Allowing the lawsuit to proceed under those circumstances "would permit a plaintiff 'with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a

reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Id.* (quoting *Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 741 (1975)).

In this case, as in *Dura*, Plaintiffs have failed to provide any indication of "what the causal connection might be" between the alleged failure to adequately monitor and disclose fees paid for administrative services and any market losses that Plaintiffs may have experienced. As in *Dura*, "as a matter of pure logic," there is no obvious connection. On the contrary, investment losses are caused by external factors and market forces that Plaintiffs loosely refer to as "generalized market fluctuations," Compl. ¶ 6, not fee arrangements for administrative service providers. But ERISA does not hold fiduciaries liable for market-based losses except to the extent that their breaches of fiduciary duty caused those losses. *Jenkins*, 444 F.3d at 924; *see also Brandt*, 687 F.2d at 898. In seeking to recover market-based losses, Plaintiffs are trying to turn ERISA's investment safe harbor into "a partial downside insurance policy," *Dura*, 544 U.S. at 348, which is no more permitted under ERISA than it is under the securities laws. *See* 29 U.S.C. § 1109(a).

## Conclusion

To the extent that Plaintiffs can prove that Defendants' alleged breach of their fiduciary duties caused the Plan to pay excessive and unreasonable administrative fees, the losses directly resulting from the payment of those fees may be recoverable under ERISA. That claim will proceed regardless of this Court's ruling on this motion. To the extent that Plaintiffs are also seeking recovery of investment losses, their claims should be dismissed.

11

                Respectfully submitted,

                EXELON CORPORATION; WILLIAM BERGMAN, in his capacity as Exelon Corporation's Director of Employee Benefit Plans and Programs; COMPENSATION COMMITTEE OF EXELON CORPORATION'S BOARD OF DIRECTORS; M. WALTER D'ALESSIO, ROSEMARIE B. GRECO, RONALD RUBIN and RICHARD L. THOMAS, all in their capacities as members of the Compensation Committee; EMPLOYEE SAVINGS PLAN INVESTMENT COMMITTEE; RISK OVERSIGHT COMMITTEE OF THE EXELON CORPORATION BOARD OF DIRECTORS; and SUE LING GIN, JUDGE NELSON A. DIAZ, EDGAR D. JANNOTTA, WILLIAM C. RICHARDSON, Ph.D., JOHN W. ROGERS, JR. and RONALD RUBIN, all in their capacities as members of the Risk Oversight Committee

By:   /s/ Eric S. Mattson
       One of their attorneys

Anne E. Rea
Mark B. Blocker
Eric S. Mattson
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

## CERTIFICATE OF SERVICE

Eric S. Mattson, an attorney, hereby certifies that on November 7, 2006, he caused a copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss to be served on the following counsel via the Court's Electronic Case Filing system:

Elizabeth J. Hubertz
Schlichter, Bogard & Denton
120 W. Main Street, Suite 208
Belleville, IL 62220

/s/ Eric S. Mattson