## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**BRIAN LOOMIS**, *et al.*,
**individually and on behalf of those**
**similarly situated,**

     **Plaintiffs,**

**v**                              **CASE NUMBER: 06 CV 4900**

**EXELON CORPORATION,** *et al.*       **Hon. John W. Darrah**

     **Defendants.**

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Jerome J. Schlichter
Elizabeth J. Hubertz
Heather Lea
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street
Suite 900
St. Louis, MO 63102
ehubertz@uselaws.com
Tel:    314-621-6115
Fax:    314-621-7151

Lead Counsel for Plaintiffs

## Table of Contents

I. BACKGROUND ...............................................................................................1

  A. INTRODUCTION ......................................................................................1

  B. THE PROPOSED CLASS...........................................................................4

II. ARGUMENT ...................................................................................................4

  A. INTRODUCTION ......................................................................................4

  B. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(A)....................6

    1. Numerosity.........................................................................................6

    2. Commonality......................................................................................7

    3. Typicality ..........................................................................................10

    4. Adequacy of Representation ..................................................................13

  C. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(B)...................15

    1. The Class Should Be Certified Under Rule 23(b)(1)................................15

    2. In The Alternative, The Class Should Be Certified Pursuant

      To Rules 23(b)(2) And (b)(3) ................................................................17

      a. Plaintiffs' Claims Can Be Certified Under Rule 23(b)(2) ..................18

      b. Plaintiffs' Legal Claims Should Be Certified Under Rule 23(b)(3) ...19

        1. Common Issues Predominate.........................................................19

        2. A Class Action Is The Best Means Of Resolving

          Plaintiffs' Claims ........................................................................20

  III. CONCLUSION.............................................................................................21

## Table of Authorities

**Cases:**

*Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 573358 (N.D. Ill. Jul. 30, 1999) ................................................................................................................11

*In re Allstate Ins. Co.*, 400 F.3d 505 (7th Cir. 2006) ....................................17

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002) ......................................16

*Cannon v. Nationwide Acceptance Corp.*, 1997 U.S. Dist. LEXIS 3517 (N.D. Ill. Mar. 24, 1997) ..................................................................................................7

*Chandler v. Southwest Jeep Eagle*, 167 F.R.D. 302 (N.D. Ill 1995) ............6

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) .............................................4

*Colesberry v.Ruiz Food Prods., Inc.*, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ........................................................................................16

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ....................10

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ..................16

*Edmondson v. Simon*, 86 F.R.D. 375 (N.D. Ill. 1980) ...................................6

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................6

*Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005) ........................21

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ...........................13

*Gruby v. Brady*, 838 F. Supp. 820 (S.D.N.Y. 1993) ....................................13

*Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603 (N.D. Ill. Mar. 20, 2001) .............................................................................................6

*In re ADC Telecomm. ERISA Litig.*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782 (D. Minn. Sep. 15, 2005) ....................................................16, 19

*In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01 C 2963, 2002 WL 31818964 (N.D. Ill. Dec. 16, 2002) .............................14

*In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sep. 27, 2006) ...............................................................................8, 9

*In re Aquila Inc. ERISA Litigation*, 237 F.R.D. 202 (W.D. Mo. 2006)................12, 16

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).........................................19, 20

*In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004)..........................12

*In re Control Data Corp. Securities Litig.,* 116 F.R.D. 216 (D. Minn. 1986).............12

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436
    (S.D.N.Y. 2004)...........................................................................................16, 17, 18

*In re IKON Office Solutions*, 191 F.R.D. 457 (E.D. Pa. 2000)....................................16

*In re Mexico Money Transfer Litig.,* 267 F.3d 743 (7th Cir. 2001)............................19

*In re Polaroid ERISA Litig.,* No. 03 Civ. 8335(WHP), 2006 WL 2792202
    (S.D.N.Y. Sep. 29, 2006)..................................................................................13, 16

*In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3rd Cir. 2005)....................9

*In re Williams Companies ERISA Litig.*, 231 F.R.D. 416 (N.D. Okla. 2005) .............12

*In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ.4816 DLC, 2004 WL 2211664
    (S.D.N.Y. 2004)...................................................................................................16

*Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) ..................................................12

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ......................................................8

*Kolar v. Rite-Aid Corp.*, No. CIV A 01-1299, 2003 WL 1257272 (E.D. Pa. Mar.
    11, 2003) ...............................................................................................................17

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)..............................................................9

*Long v. Thornton Township High Sch. Dist.*, 82 F.R.D. 186 (N.D. Ill. 1979)...............7

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).........................16, 18

*Markham v. White*, 171 F.R.D. 217 (N.D. Ill 1997) ......................................................8

*Maxwell v. Arrow Fin. Servs., LLC.*, No. 03 C 1995, 2004 WL 719278 (N.D. Ill.
    Mar. 31, 2004).......................................................................................................8

*McDaniel v. North American Indem., N.V.*, 2003 WL 260704 (S.D. Ind. Jan. 27,
    2003) ......................................................................................................................8

*Milofsky v. American Airlines, Inc.*, 442 F.3d 311 (5th Cir. 2006)................................9

*Nelson v. IPALCO Enterp., Inc.*, No. IP02-477-CHK, 2003 WL 23101792 (S.D. Ind. 2003) ...................................................................................9, 10, 11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..........................................16

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) .....................................12

*Rogers v. Baxter Intern. Inc.*, No. 04-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) .................................................................................. *passim*

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .................................8, 10

*Roth v. Aon Corp.*, 238 F.R.D. 605 (N.D. Ill. 2006) ....................................19

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005)........................................................................16

*Szabo v. Bridgeport Machines Inc.*, 249 F.3d 672 (7th Cir. 2001) ................................6

*Thornton v. Evans*, 692 F.2d 1064, 1079-80 (7th Cir. 1982)........................................16

*Von Moore v. Simpson*, No. 96 CV 2971, 1997 WL 570769 (N.D. Ill. Sep. 6, 1997) ..............................................................................20

*Warnell v. Ford Motor Co.*, 189 F.R.D. 383 (N.D. Ill. 1999) .......................................8

*Westefer v. Snyder*, Nos. 00-162-GPM, 00-708-GPM, 2006 WL 2639972 (S.D. Ill. Sep. 12, 2006).....................................................................6

*In re Williams Companies ERISA Litig.*, 231 F.R.D. 416 (N.D. Okla. 2005) .............12

*Zielinski v. Pabst Brewing Co., Inc.*, No. 04-0385, 2005 WL 3240590 (E.D. Wis. Nov. 30, 2005) ..............................................................................6

## Statutes

26 U.S.C. § 6058 ................................................................................3

29 U.S.C. § 1002(7) ............................................................................4

29 U.S.C. § 1002(21)(A) .....................................................................2

29 U.S.C. § 1024(b)(1) .....................................................................2, 3

29 U.S.C. § 1103(c)(1) ........................................................................2

29 U.S.C. § 1104(a)(1)                                                        2

29 U.S.C. § 1104(c) .......................................................................11, 12

29 U.S.C. § 1109 .................................................................................4

29 U.S.C. § 1132(a)(2).................................................................. *passim*

29 U.S.C. § 1132(a)(3)                                                  *passim*

29 U.S.C. § 1365 .............................................................................. 3

## Rules and Other Authority

Federal Rule of Civil Procedure 23(a) .............................................5, 6, 10

Federal Rule of Civil Procedure 23(a)(1) ...........................................6

Federal Rule of Civil Procedure 23(a)(2) ...........................................

Federal Rule of Civil Procedure 23(a)(3) .......................................10, 12

Federal Rule of Civil Procedure 23(a)(4) .........................................13

Federal Rule of Civil Procedure 23(b)...............................................5

Federal Rule of Civil Procedure 23(b)(1) ..................................... *passim*

Federal Rule of Civil Procedure 23(b)(2) .....................................5, 17, 18

Federal Rule of Civil Procedure 23(b)(3) ...................................5, 17, 19, 20

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**BRIAN LOOMIS,** *et al.,*
**individually and on behalf of those**
**similarly situated,**

      **Plaintiffs,**

**v**                              **CASE NUMBER: 06 CV 4900**

**EXELON CORPORATION,** *et al.*        **Hon. John W. Darrah**

      **Defendants.**

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Brian Loomis, Debra Cogswell, Ron Welte, and Wayne Johnson file this memorandum in support of their motion for class certification.

### I.  BACKGROUND

This action arises from the breach of the fiduciary duties imposed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 *et seq.* ("ERISA"), on Defendant Exelon Corporation ("Exelon") and those employees, directors and officers who are also named as Defendants. These breaches occurred on a plan-wide basis, and were the result of decisions made at the plan, rather than the individual level, affecting not only the named Plaintiffs, but all of the participants and beneficiaries in the Exelon-sponsored 401(k) plan at issue.

The U.S. Supreme Court has made an explicit determination that this type of ERISA suit *must* proceed as a representative action on behalf of the plan as a whole. By contrast, putative class actions in areas such as employment discrimination have no such judicial mandate. Treatment of this collective wrong on a collective basis is the best, most efficient and most appropriate method of handling this litigation. Plaintiffs' motion should be granted.

### A.  INTRODUCTION

Defendant Exelon Corporation sponsors several 401(k) plans for its employees and those of its subsidiaries. The largest is the Exelon Corporation Employee Savings Plan, Plan 003 (the

"Plan" or the "ESP"). (Complaint, ¶ 10.) All of the Plaintiffs participate in this Plan. Participants contribute varying percentages of their before-tax (and in some cases, after-tax) earnings to the Plans. Exelon matches those contributions, also in varying percentages. (Complaint, ¶ 31; *See also* Summary Plan Description at 4-6, attached as Exhibit A.)[1]

ERISA describes the duties of a plan sponsor and its delegates toward the employees who participate in 401(k) plans. Section 403(c) requires that the Plan's assets be used "solely for the exclusive purposes of providing benefits to participants" and for "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). ERISA also provides that those acting in a fiduciary capacity[2] toward the Plan and the Plan participants must discharge their fiduciary duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciaries must act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). They must also discharge those duties "with the care, skill, prudence, and diligence" that a "prudent man" acting in a similar capacity would use under similar circumstances. 29 U.S.C. § 1104(a)(1)(B). The Plan's fiduciaries owe these duties to all Plan participants, including the named Plaintiffs.

The administrative costs of running the plan are charged across the board to all Plan participants. As the Summary Plan Description explains, "Your account balance will be charged with a proportionate share of the general expenses of administering the ESP." (Exhibit A at 10.)[3] An example of such an administrative fee is the money that the Plan reported paying to "Fidelity Institutional Operations Company" for record keeping. (See Annual Return/Report of Employee

---

[1]     ERISA §104(b)(1), 29 U.S.C. § 1024(b)(1), requires the Plan Administrator to provide all Plan participants and beneficiaries a copy of a "Summary Plan Description

[2]     Article 11.1 of the Exelon Corporation Employee Savings Plan – the document establishing the Plan – describes the persons who have fiduciary responsibility over the investments and the administration of the Plan. *See* Excerpts from the Exelon Corporation Employee Savings Plan, attached as Exhibit B. The ERISA statute provides that a person can be a fiduciary either because the documents establishing the plan say so or because of their conduct. 29 U.S.C. § 1002(21)(A)(i) & (iii).

[3]     Although the SPD mentions the existence of these administrative fees, it does not state how much they are. And, although the SPD lists the total amount of "fund management fees" for some of the investments, it does not identify the amount of those fees that are actually used to defray the "general expenses of administering the ESP."

2

Benefit Plan, Form 5500, Schedule C, attached as Exhibit C.[4])

Participants are also charged "fund management fees" which are subtracted from the returns on their investment in a particular fund before the returns are reported to them. *Id.* A portion of these fund management fees is used to pay the general expenses of administering the Plan. For example, the Administrative Fee Agreement, entered into by the Plan Sponsor/Administrator of the Exelon Corporation Savings Plan, T. Rowe Price Services Inc. and the T. Rowe Price Funds, provides that a designated percent of the fees paid by the Plan to T. Rowe Price mutual funds will be used to pay fees to other entities for the Plan's administrative expenses, such as record keeping expenses. (*See* Administrative Fee Agreement at 1 ("the Funds may ... pay the Plan a fee to compensate the Plan for certain expenses incurred as a result of providing [various recordkeeping and administrative services]"); at 3 (each Fund's "payment to the Plan ... represents compensation for Administrative Services only" and "does not constitute payment ... for investment advisory services"), at 5 (chart describing the percentages to be returned to the Plan), at B-1 (rider indicating that payments are to be made directly to the Plan record keeper), attached as Exhibit D .) Thus, the Plan's administrative expenses consist of both (1) the "general expenses of administering the ESP," described in the Plaintiffs' Complaint as "Hard Dollar" expenses (Complaint, ¶¶ 56-58) ; and (2) the portion of the "fund management fees" that is also used to cover the Plan's administrative expenses, described in the Plaintiffs' Complaint as "Revenue Sharing Payments" (Complaint, ¶¶ 60-77).

Plaintiffs allege that the persons identified as fiduciaries in the Complaint breached their fiduciary duties by causing or allowing unreasonable and excessive administrative fees and expenses to be charged against the assets of the Plan (and thus to the participants), by failing to make prudent investment decisions in the selection and retention of funds, and by failing to ensure that the Plan's assets were used solely for the exclusive purpose of providing benefits to participants. (*See* Complaint, ¶¶ 18-22 (identifying fiduciaries and their roles in connection with the Plan); ¶¶ 63-66, 68, 93(g), 93(j), (explaining actions of fiduciaries concerned with choosing

---

[4]       Deferred-compensation plans, such as the Plan, are required to file informational tax returns, known as Form 5500s. *See* 26 U.S.C. § 6058; ERISA §§ 104 and 4065, 29 U.S.C. §§1024 & 1365.

funds); ¶¶ 53-77 (describing how fees are charged in the Plan and what they were used for).

## B.    THE PROPOSED CLASS

ERISA provides several remedies for breaches of fiduciary duties.  Section 502(a)(2),
allows a participant to bring a "civil action ... for appropriate relief under section 1109 of this
title."  29 U.S.C. § 1132(a)(2).   Section 1109 (ERISA § 409) provides that a plan fiduciary who
breaches his or her ERISA-mandated fiduciary obligations shall be personally liable to "make
good to such plan any losses to the plan resulting from each such breach ... ."  29 U.S.C. § 1109(a).
ERISA § 502(a)(3) provides that a participant may sue "to enjoin any act or practice which violates
any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable
relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms
of the plan."  29 U.S.C. § 1132(a)(3).  Plaintiffs have sued under both sections 502(a)(2) and (a)(3).
(Complaint, ¶¶ 92-97 (section 502(a)(2)) and ¶¶ 98-110 (section 502(a)(3)).)

Unlike suits brought in other areas of law such as Title VII, suits brought pursuant to
section 502(a)(2) are *required* to be brought in a representative capacity, *i.e.*, on behalf of the plan.
*See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).   The Seventh Circuit
has endorsed class certification as one method of accomplishing section 502(a)(2)'s goals.
*Thornton v. Evans*, 692 F.2d 1064, 1079-80 (7th Cir. 1982).  *See also Coan v. Kaufman*, 457 F.3d
250, 260-61 (2d Cir. 2006).

Plaintiffs Loomis, Cogswell, Welte, and Johnson are current or former employees of
Exelon or its subsidiaries and are also "participants" in the Plan, as that term is defined under
ERISA. 29 U.S.C. § 1002(7).  In their role as participants, they seek to represent the following
class:

> All persons, *excluding the Defendants, the Committees and/or other*
> *individuals who are or may be liable for the conduct described in*
> *this Complaint,* who are or were participants or beneficiaries of the
> Plan and who are, were or may have been affected by the conduct
> set forth in this Complaint, as well as those who will become
> participants or beneficiaries of the Plan in the future.

## II. ARGUMENT

## A. INTRODUCTION

4

Class certification involves a two-step analysis. First, Plaintiffs must meet the four requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Second, Plaintiffs must meet the requirements of at least one of the subsections of Rule 23(b). Rule 23(b)(1)(A) allows for certification when the prosecution of separate suits by the individual class members would create a risk of inconsistent or varying adjudications and establish incompatible standards for the Defendants. Rule 23(b)(1)(B) allows certification when a judgment in one suit would be dispositive of the interests of the other class members who were not parties to the suit. The drafters of Rule 23(b)(1) described suits such as this one – an action for breach of fiduciary duty brought by those to whom the duty is owed – as a prime example of why Rule 23(b)(1)(B) was enacted. Committee Notes, Fed. R. Civ. P 23(b)(1)(B) (1966 amendments). Certification is most appropriate under this subsection.

In the alternative, Plaintiffs seek certification under Rules 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) permits certification when the party opposing the class "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Because the Defendants' breaches took place at the Plan level, and because the remedy will necessarily also be implemented at the Plan level, the Defendants "acted ... on grounds generally applicable to the class," making certification under Rule 23(b)(2) appropriate. However, because the monetary relief sought by Plaintiffs is more than an "incidental" adjunct to the equitable relief they also seek, certification of those claims may be appropriate as well under Rule 23(b)(3). *See, e.g., Jefferson v. Ingersoll Int'l Inc.*, 194 F.3d 894, 899 (7th Cir. 1999). This subsection provides for certification when common issues of law or fact predominate and when a class action is a superior method of handling the litigation than the thousands of individual actions that would otherwise ensue.

5

A motion for class certification is not an occasion for examination of the merits of the case, with certification being granted only if the Court believes that a plaintiff class would win at trial. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Although parties opposing class certification often argue to the contrary, citing, for example, *Szabo v. Bridgeport Machines Inc.*, 249 F.3d 672 (7th Cir. 2001) and its progeny, the Seventh Circuit has not overruled (and indeed could not overrule) *Eisen*. The Court's inquiry at class certification is limited to "whether plaintiff is asserting a claim which, *assuming its merit*, will satisfy the requirements of Rule 23 as distinguished from an inquiry into the merits of plaintiff's particular individual claim." *Szabo*, 249 F.3d at 677 (emphasis added). "The court maintains broad discretion to determine whether a proposed class satisfies the requirements and should err in favor of maintaining class actions." *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at * 2 (N.D. Ill. Mar. 20, 2001).

## B. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(A).

The proposed representatives satisfy all four of the requirements of Rule 23(a). Those requirements are commonly known as numerosity, commonality, typicality, and adequacy of representation. *Westefer v. Snyder*, Nos. 00-162-GPM, 00-708-GPM, 2006 WL 2639972, at * 1 (S.D. Ill. Sep. 12, 2006).

### 1. Numerosity

In order for a lawsuit to proceed as a class action, Rule 23(a)(1) requires that the class be "so numerous that joinder is impracticable." Although Rule 23 does not specify a minimum number of class members that must exist before a class can be certified, numerosity can be, and often is, determined by sheer numbers alone. *Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D. Ill. 1980) ("when a class is large, numbers alone are dispositive"). Courts in this circuit have held that managing a suit of more than 40 plaintiffs is "impracticable," and thus class treatment is called for. *Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302, 307 (N.D. Ill 1995) (courts have usually deemed joinder impracticable when the class numbers more than 40; citing H. Newberg, *Class Actions*, § 305 (1992)). *See also Zielinski v. Pabst Brewing Co., Inc.*, No. 04-0385, 2005 WL 3240590, at *2 (E.D. Wis. Nov. 30, 2005) (class of 457 retirees claiming entitlement to ERISA plan

benefits is sufficiently numerous that joinder is impracticable). Because there are clearly far more than 40 potential class members – indeed there are far more than 457 potential class members – Plaintiffs easily meet the numerosity requirement.

At this point, Plaintiffs do not know the exact number of class members, as such information is entirely within the control of Defendants. However, a plaintiff's burden at class certification is not to identify an exact number of potential class members, but to provide some evidence or a reasonable estimate of the number of absentee class members. *Long v. Thornton Township High Sch. Dist.*, 82 F.R.D. 186, 189 (N.D. Ill. 1979). In their rulings on class certification, courts are permitted to "make common sense assumptions in order to find support for numerosity." *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472, at \*2 (N.D. Ill. Mar. 25, 1997) (internal quotations omitted). In this case, the Plan "participants with account balances" would be members of the proposed class, since Plaintiffs have alleged that the excessive costs were charged to the Plan as a whole, but were deducted from the accounts of the participants. (*See* Complaint, ¶ 55; Exhibit A at 10.)

Publicly available documents indicate that the members of each class number in the tens, of thousands. According to the Form 5500 that was filed for year 2004 by Defendant Exelon on behalf of the Plan, there were 23,291 participants with account balances in the Plan. (*See* Annual Return/Report of Employee Benefit Plan, Form 5500, attached as Exhibit E.)[5] Courts within the Seventh Circuit have found sufficient numerosity based upon similar evidence in ERISA breach-of-fiduciary duty cases. *Smith v. Aon Corp.*, 238 F.R.D. 609, 616-17 (N.D. Ill 2006) (finding numerosity; relying on statement in Form 5500 that there were 32,445 participants).[6] Because the Plaintiffs have shown that the likely number of members in the class is in the tens of thousands, the Plaintiffs have satisfied Rule 23(a)'s numerosity requirement.

### 2. Commonality

---

[5] The Form 5500 for the year ending 2004 is the latest that is publicly available.

[6] If anything, this estimate is most likely lower than the number of actual class members, since it does not include surviving spouses or estates of participants who had an interest in the Plan during the relevant period or who may still have an interest in the Plan. *See Senn v. AMCA Intern.*, No. 87-C-1353, 1988 WL 168321, at \* 2 (E.D. Wisc. Dec. 21, 1988) (certifying 95-member ERISA class including beneficiaries).

"[T]he commonality requirement has been characterized as a 'low hurdle' [that is] easily surmounted." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). To establish commonality, the Plaintiffs must share at least one common question of law or fact, although not all questions of law or fact raised need be common. *Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 390 (N.D. Ill. 1999). *See also Markham v. White*, 171 F.R.D. 217, 222 (N.D. Ill 1997) (Rule 23(a) does not require that *all* questions of law *and* fact be common.) A "common nucleus of operative fact" generally will satisfy the commonality requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). If the common question of law involves "standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met." *Maxwell v. Arrow Fin. Servs., LLC.*, No. 03 C 1995, 2004 WL 719278, at * 4 (N.D. Ill. Mar. 31, 2004). Commonality will not be defeated merely because there are some factual variations among the claims of the class members. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

"ERISA breach-of-fiduciary-duty actions regularly present common questions of law and fact." *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 SWK, 2006 WL 2789862, at * 2 (S.D.N.Y. Sep. 27, 2006) (certifying ERISA settlement class); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (the "question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries"; finding commonality, certifying class.) For this reason, courts in the Seventh Circuit have not hesitated to certify classes in cases involving allegations of breaches of fiduciary duty on the part of ERISA plan fiduciaries. In *Smith*, a suit alleging breaches of fiduciary duty with regard to a defined contribution plan's company stock fund, the court found commonality based on, among other things, (1) whether the Defendants owed fiduciary duties to the plan and class members; (2) whether Defendants breached those duties by failing to act prudently and in the interests of the plan; (3)whether the defendants adequately investigated and monitored the plan's investments; and (4) the existence of damages. *See Smith*, 238 F.R.D. at 617. In *McDaniel v. North American Indem., N.V.*, No. IP-02-C-0422, 2003 WL 260704 (S.D. Ind. Jan. 27, 2003), the court found commonality where the plan participants alleged that the ERISA fiduciaries injured the class of

8

welfare-plan participants as a whole by "systematically denying benefits." *Id.* at * 3. Similarly, in

*Rogers*, a suit similar to *Smith* , the court found that commonality was satisfied where the plaintiffs

pointed to three common issues: "(1) whether defendants were plan fiduciaries; (2) whether

defendants breached one or more fiduciary duties ... and (3) whether the alleged breaches of

fiduciary duty resulted in damage to the Plan." *Rogers v. Baxter Intern. Inc.*, No. 04-6476, 2006

WL 794734, at * 3 (N.D. Ill. Mar. 22, 2006).[7] And, in *Nelson v. IPALCO Enterprises*, also

alleging breaches of fiduciary duty in connection with a company stock fund, the court found

commonality where the class members alleged that the ERISA plan fiduciaries breached their

duties by maintaining employer stock as an option in the plan, by making representations to the

participants about their investment options, including the company stock fund, and by failing to act

with due care and loyalty toward the class members. *See Nelson v. IPALCO Enterp., Inc.*, No.

IP02-477-CHK, 2003 WL 23101792, at * 4 (S.D. Ind. Sep. 30, 2003).[8]

Likewise, common issues are presented here. Plaintiffs challenge the reasonableness of

the administrative fees charged to the Plan as a whole. These fees are paid by the Plan participants

and each participant has this issue in common. In addition, Plaintiffs identified 14 common issues

of law and/or fact, listing them in paragraph 27. Although many of the issues listed there overlap,

subparagraphs 27(b)(i), (viii), (x) and (xiii) collectively present the second question of the same

---

[7] The *Rogers* defendants have taken an interlocutory appeal from one portion of the district court's denial of their motion to dismiss. In the trial court, they argued that unless every single Plan participant was injured by an ERISA defendant's action, the suit cannot said to have been brought "on behalf of the Plan" for purposes of § 502(a)(2). Every other circuit to have considered the issue, and at least 12 district courts, have reached the conclusion that a "subset" of participants can indeed bring suit "on behalf of the Plan. *See, e.g., Milofsky v. American Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (*en banc*); *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 232 (3rd Cir. 2005); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995). This issue is not presented here, because Plaintiffs challenge the amount of administrative fees charged to the Plan as a whole for operating the Plan as a whole, rather than confining their complaint to a single investment option, as did the *Rogers* plaintiff. At any rate, the *Rogers* class certification decision was not on appeal.

[8] *See also In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at * 2 (common issues were "the identification of fiduciaries, whether the defendants acted as fiduciaries, and the existence of ERISA violations."); *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ.4816 DLC, 2004 WL 2211664, at * 2 (S.D.N.Y. 2004) (finding commonality, certifying class); *Colesberry v.Ruiz Food Prods., Inc.*, 2006 WL 1875444, at *3 (E.D. Cal. June 30, 2006) (common issue was whether the ERISA plan fiduciaries breach ed their duty of prudence). *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (finding commonality in ERISA breach of fiduciary duty suit )

legal and factual questions the *Rogers* court found sufficient to satisfy the commonality inquiry –
whether actions of the plan fiduciaries regarding the entire plan constituted a breach of their duties.
*See Rogers*, 2006 WL 794734, at * 3 (question (2)). Subparagraphs 27(b)(i), (ii), (iii), (x), (xi) and
(xiv) collectively pose *Rogers'* third question. All class members will have to offer proof of these
issues and thus share these issues in common. Plaintiffs have satisfied Rule 23(a)(2)'s
requirements.

### 3. Typicality

Rule 23's requirements of commonality and typicality are "closely related." *Rosario*, 963
F.2d at 1018. Typicality, however, "focuses on the class representatives and whether their pursuit
of their own claims will work for the benefit of the entire class." *IPALCO*, 2003 WL 23101792, at
* 4. Claims are typical when they arise from the same event or practice or course of conduct that
gives rise to the claims of other class members and when the plaintiffs' claims are based on the
same legal theory as those class members' claims. *De La Fuente v. Stokely-Van Camp, Inc.*, 713
F.2d 225, 232 (7th Cir. 1983). "Typical" does not mean "identical," and the typicality requirement
is liberally construed. *Gaspar*, 167 F.R.D. at 57.

Plaintiffs have alleged that the Defendants caused or allowed excessive and unreasonable
administrative fees and costs to be charged to the Plan as a whole – a course of action which
necessarily affected all of the participants and beneficiaries whose money is in the Plan. In fact,
the SPD makes it explicit: "general expenses of administration" will be charged to the Plan
participants' accounts on a proportionate basis. (Exhibit A at 10.) Throughout the Complaint,
Plaintiffs have made it clear that they are challenging a wrong committed not only against the
named Plaintiffs in their roles as participants, but against every participant and against the Plan as
a whole. (*See, e.g.,* Complaint, ¶10 (seeking to recover losses experienced by the Plan on a
plan-wide basis); ¶ 11 (fees and expenses paid *by the Plan* were excessive); ¶¶ 76-77 (fees charged
to the *Plan* were excessive and not used for the Plan's benefit); ¶ 94(a)-(c) (causing *the Plan* to pay
excessive and unreasonable fees) (emphasis added).)

While the amount of loss attributable to the unreasonably excessive fees and costs may
differ from participant to participant, such factual distinctions between the claims of the named

10

plaintiffs and those of the other class members do not prevent a finding of typicality. *See DeLaFuente*, 713 F.2d at 232. *See also Rogers*, 2006 WL 794734, at * 3 (named plaintiff's habit of trading in and out of funds within his 401(k) plan did not make his claims atypical, even though it affected the amount of his losses; certifying class of plan participants). "Individual damages will not defeat a named Plaintiff's typicality." *Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 573358, at * 6 (N.D. Ill.), *adopted in relevant part by* 1999 WL 6965485 (Sep. 30, 1995). Thus, the fact that the class members may have held different funds within the Plan, or even held the same fund for different periods of time, and have as a result lost different sums of money, does not mean that the class as a whole does not share claims. If relief is granted, the Plan itself will be made whole, as required by ERISA and the U.S. Supreme Court; and individuals will participate in this recovery.

The existence of defenses involving some degree of individuality also does not render the Plaintiffs' claims atypical. Typicality is "determined with reference to the [defendants'] actions, not with respect to particularized defenses [the defendants] might have against certain class members." *IPALCO*, 2003 WL 2003 WL 23101792, at *5-6. In *Rogers,* for example, the court found the plaintiffs' claims to be typical, even though the plaintiffs made individualized decisions about their investments. *See Rogers*, 2006 WL 794734, at * 5.

The two individualized defenses most often asserted by defendants in an effort to block class certification are the claimed existence of a defense under ERISA § 404(c)[9] and the plaintiffs' supposed inability to prove reliance. Neither presents any difficulty here. For example, the *Rogers* court, along with the vast majority of courts to have considered the issue, observed that the existence of a § 404(c) defense was an issue that all members of the class shared. *Id. See also In re Polaroid ERISA Litig.,* No. 03 Civ. 8335(WHP), 2006 WL 2792202, at * 9 (S.D.N.Y. Sep. 29,

---

[9]     ERISA § 404(c) allows a Defendant who satisfies certain prerequisites a limited Safe Harbor from liability for certain types of losses – those losses caused by the Plaintiffs' decision to place their money in a particular fund within the Plan's menu of investment choices. (*See* Complaint, ¶¶ 49-52.) As Plaintiffs have made clear, Defendants have failed to meet the requirements for falling within § 404(c)'s protection. (*Id.* at ¶¶ 81-91; 95-97.) However, the Court does not have to resolve the § 404(c) issues now. *See Williams*, 231 F.R.D. at 421 (noting that "whether the Plan falls under § 404(c) is subject to disagreement between the parties and that issue is not properly before the court at this time"; finding that even if the plan were a § 404(c) plan, individual issues did not predominate and certifying a class).

2006 ) (similarly rejecting claim that existence of individual investment issues made the plaintiffs claims atypical); *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 421 (N.D. Okla. 2005) (same); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 543-44 (E.D. Mich. 2004) (same). Whether or not the *Plan* complies with the prerequisites of § 404(c) is indeed a Plan-wide question shared by all of the participants.

Nor is reliance at issue here. The Seventh Circuit has held that in a suit for breach of fiduciary duty, a plaintiff must show: (1) the defendants are Plan fiduciaries; (2) the defendants breached those duties; and (3) the breach caused harm to the Plaintiffs. *See Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006). Plaintiffs here have alleged that the payment of excessive and unreasonable administrative fees to operate the Plan was such a breach and that this breach injured the Plan, and thus the Plan participants.

Even if reliance were an issue, it would still not form a barrier to a Plan-wide suit under ERISA § 502(a)(2). While the defendants argued that the *Rogers* plaintiffs' breach-of-fiduciary-duty claims involving misrepresentation and nondisclosure required individualized treatment, the court found otherwise, pointing out that the alleged misleading statements were made on a plan-wide basis. *Rogers*, 2006 WL 794734, at * 4 (citing cases). Relatedly, in *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004), the court found that in a case where the defendant was "not alleged to have had individualized communications with a participant," but rather made uniform communications to all participants, and made uniform decisions regarding the plan's choice of investments, any issues of reliance did not preclude class certification. *Id.* at 523. *See also In re Control Data Corp. Securities Litig.,* 116 F.R.D. 216, 221 (D. Minn. 1986) (nothing unique about a reliance-based defense). And, as the court found in *In re Aquila Inc. ERISA Litigation*, 237 F.R.D. 202 (W.D. Mo. 2006), because a suit under § 502(a)(2) seeks relief on behalf of the Plan for the Plan's losses, any reliance at issue is the Plan's. *Id.* at 211. Here, Plaintiffs offer similar allegations: they, too, claim that the Defendants failed to tell *any* class member the truth about the amount of the Plan's fees and expenses. (*See* Complaint, ¶¶ 78-80; 81-89.) Any information, such as the SPD, the forms on which the participants' statements were reported, and the Form 5500s, were uniform documents promulgated on a Plan-wide basis, so that all participants saw the same materials. For these reasons, the requisites of Rule 23(a)(3) are met.

12

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the class representatives must "fairly and adequately protect the interests of the class." In determining adequacy of class representation, the court considers (1) whether any conflicts of interest exist between the named plaintiffs and the class members and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class. *Gaspar,* 167 F.R.D. at 58. To be an adequate class representative, a plaintiff must not have claims that are antagonistic to, or which conflict with, those of the class members. A plaintiff must also have attorneys who are competent, experienced and able to conduct the litigation vigorously. *Id.* Plaintiffs meet this standard.

All of the named Plaintiffs are participants in the Plan they seek to represent and all have a substantial stake in the Plan. (*See* Answer and Affirmative Defenses, ¶ 17 (admitting Plaintiffs have "account balances under the Plan.") All Plaintiffs have participated in discovery by providing documents and answering interrogatories. Three of the four Plaintiffs (Johnson, Loomis & Cogswell) have given their depositions, and Plaintiff Welte is scheduled to give his in the next few weeks as soon as he is recovered from his knee surgery.

All Plaintiffs have been injured as a result of the Defendants' practices and will continue to be injured as long as their money remains invested in the Plan. They seek a declaration that the practices described in the Complaint – practices that harmed the Plan as a whole and that cost the participants money – violated ERISA. They also seek to put an end to these ERISA violations and to restore lost money to the Plan.

Because the relief sought by the named Plaintiffs would affect the Plan as a whole, and because any monetary recovery in this action would go to the Plan, the interests of the named Plaintiffs are aligned with those of the absent class members since these class members, too, will benefit if the Plaintiffs are successful. *See Gruby v. Brady*, 838 F. Supp. 820, 827 (S.D.N.Y. 1993) (observing that because ERISA breach of fiduciary duty suits must be brought on a plan-wide basis, adequacy is met). *See also In re Polaroid ERISA Litig.*, 2006 WL 2792202, at * 10.[10] Thus,

---

[10]  Defendants may argue, as others have done, that Plaintiffs cannot show that every participant is dissatisfied with the Defendants' operation of the Plan, or that not every person lost money as a result of the breaches of fiduciary duty, and that the named Plaintiffs are in conflict with those class members. However,

a court can find adequacy, despite differences among participants in their "desires as to the future financial stability of [the plan sponsor]," where "[e]very employee, whether former or current, has the desire to repair the alleged harm to their pension plan"-- the relief sought by the suit. *In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01 C 2963, 2002 WL 31818964, at * 2 (N.D. Ill. Dec. 16, 2002).

In addition, the law firm representing the proposed classes is highly qualified to represent these classes. Schlichter Bogard & Denton has fifteen attorneys, including six trial attorneys and one appellate attorney dedicated to prosecuting ERISA-based class actions and other complex litigation. (Firm Biography, attached as Exhibit F.)  For over a year and a half before filing suit, the law firm has spent hundreds of hours in intense investigation, speaking with participants in the Plan, obtaining documents from public sources and the Plan's administrator, reviewing and analyzing the Plan's financial statements, developing expertise with industry practices, conducting extensive legal research, and fashioning the legal theories through which to bring the claims.  It has expended considerable resources in pursuit of the class claims, and both expects to and is capable of expending all resources necessary to vigorously prosecute this litigation.

Plaintiffs' counsel, Schlichter Bogard & Denton, has extensive experience litigating class actions of similar size, scope, and complexity to this case.  Mr. Schlichter has more than 33 years of experience as a trial lawyer and as a member of the California bar.  He has successfully obtained class certification on behalf of sizable classes in multiple large employment discrimination cases. For example,

- *Brown v. Terminal Railroad Association*, was certified as a class, and successfully concluded after more than 5 years of litigation.
- *Mister v. Illinois Central Gulf Railroad*, 832 F.2d 1427 (7th Cir. 1987) was certified, tried to conclusion and finally settled for more than $10 million after 12 ½ years of litigation.

---

this is not the type of conflict that thwarts a finding of adequacy. *Summers v. UAL Corp. ESOP Committee*, No. 03 C 1537, 2005 WL 1323262, at * 4 (N.D. Ill. Feb. 15, 2005) (finding adequacy even though some plan participants wanted the company stock sold and some did not).

> *Wilfong v. Rent-A-Center,* No. 00-680-DRH (S.D. Ill.), a nationwide gender
> discrimination case, was certified and successfully settled for $47 million,
> providing significant financial and other relief to the class of thousands, after
> defeating the defendant's attempt to conduct a reverse auction.

In addition, attorney Elizabeth J. Hubertz has similarly been involved in large-scale employment actions in private practice and as a government attorney before joining the firm. She has most recently been class counsel in *Allen v. International Truck and Engine Corp.* and *Dean v. International Truck & Engine Corp.,* a pair of Title VII race discrimination suits originating in this district. *See, e.g., Allen,* 358 F.3d 469 (7th Cir. 2004) (appeal of denial of class certification; directing certification of equitable relief class and remanding for consideration of damages class); *Dean,* 220 F.R.D. 319 (N.D. Ill. 2004) (granting motion for class certification). Attorney Nicole Bolton Ms. Bolton has substantial federal court experience in employment related claims. She has handled complex litigation for a large firm, including developing and successfully managing a joint defense group of 75 parties in a nationwide commercial case. Attorney Heather Lea has worked in the ERISA field throughout her legal career, both on behalf of plan sponsors and administrators, as well as plan participants. She is currently litigating other large-scale ERISA class suits. Because Plaintiffs and counsel are well-equipped to represent the class members, Rule 23(a)(4) is satisfied.

### C. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(B).

Plaintiffs first seek certification under Rule 23(b)(1) because their § 502(a)(2) claims fall into the category of "paradigmatic" Rule 23(b)(1) claims. In the alternative, Plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3) because the Defendants acted on a Plan-wide, and thus class-wide basis, and because Plaintiffs seek monetary damages in addition to injunctive relief. In addition to satisfying all of the requirements of Rule 23(a), Plaintiffs meet the requirements of Rule 23(b).

### 1. The Class Should Be Certified Under Rule 23(b)(1).

Plaintiffs' claims should be certified under either sub-section of Rule 23(b)(1). That Rule

provides for certification where:

> the prosecution of separate actions by ... individual members of the class would create a risk of (A) inconsistent or varying adjudications ... which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would ... be dispositive of the interest of the other members not parties to the adjudications... .

*Fed. R. Civ. P.* 23(b)(1)(A), (B). Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). In both cases, the court is concerned with the problems that would be caused if each potential class member were free to pursue his or her own lawsuit.

The Rule 23 Advisory Committee noted that "an action which charges a breach of trust ... by [a] ... fiduciary similarly affecting the members of a large class of ... beneficiaries" calls for certification under this section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999) (citing same). In fact, an ERISA breach of fiduciary duty suit is even better suited for Rule 23(b)(1) treatment than a suit for ERISA benefits because § 502(a)(2) requires that the participants bring the action in a representative capacity . *See Russell*, 473 U.S. at 144; *Thornton,* 692 F.2d at 1079.

For this reason, cases filed by 401(k) plan participants for breach of fiduciary duty are routinely brought (and certified) under Rule 23(b)(1). *See, e.g., In re Polaroid ERISA Litig.*, 2006 WL 2792202, at * 11 (breach of fiduciary duty alleged by 401(k) plan participants; Rule 23(b)(1) class certified). [11] As one court has found: *"[B]ecause of ERISA's distinctive 'representative capacity' and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453

---

[11]     The vast majority of courts in the ERISA context have certified Rule 23(b)(1) classes. *Rogers*, 2006 WL 794734, at *10 (certifying Rule 23(b)(1)(A) class); *In re Aquila, Inc. ERISA Litig.*, 237 F.R.D. at 211-12 (same)*; DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. at 80 (certifying Rule 23(b)(1) class); *Colesberry*, 2006 WL 1875444, at *5 (citing cases; certifying Rule 23(b)(1)(B) class); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (certifying Rule 23(b)(1) class); *In re ADC Telecomm. ERISA Litig.*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782, at * 5 (D. Minn. Sep. 15, 2005) (same); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2211664, at * 3 (same); *Banyai*, 205 F.R.D. at 165 (same); *In re IKON Office Solutions*, 191 F.R.D. at 466.

(S.D.N.Y. 2004).

This suit is no exception. Just as in the cases cited above, Plaintiffs, and the members of the class they seek to represent, are 401(k) plan participants who claim that the Defendants breached their ERISA-mandated fiduciary duties. Just as in the cases above, they bring suit in a representative capacity to recover losses for the Plan as a whole based on actions that took place on a plan-wide basis.

In fact, if certification is not granted, and the class members pursued their claims in the jurisdictions of their choice, the parties would face a nightmare of inconsistencies, in which the Defendants might find themselves bound by rulings that are at odds with each other, and be unable to administer the Plan. *Rogers,* 2006 WL 794734, at * 10. The possibility of multiple plan-wide monetary awards – since each suit would necessarily be brought on behalf of the Plan – is another possibility. *Id. See also Kolar v. Rite-Aid Corp.*, No. CIV A 01-1299, 2003 WL 1257272, at * 3 (E.D. Pa. Mar. 11, 2003) ("Palpably, 'inconsistent or varying adjudications' would be intolerable for the employees of the same employee benefit plans."). For these reasons, the Court should certify the Class under Rule 23(b)(1)(A) or (b)(1)(B).

### 2. In The Alternative, The Class Should Be Certified Pursuant To Rules 23(b)(2) And (b)(3).

If the Court finds that certification under Rule 23(b)(1) is proper, then there is no need to consider certification under Rule 23(b)(2) and (b)(3). Plaintiffs nonetheless present this alternative to Rule 23(b)(1) certification.

Because Plaintiffs seek both legal and equitable relief, they ask for certification under both Rule 23(b)(2) (injunctive and declaratory relief) and Rule 23(b)(3) (the "actual damages" caused by the Defendants' fiduciary breaches). Although injunctive relief is an important part of the relief requested, and is appropriate for Rule 23(b)(2) certification, the Second Circuit has determined that when substantial monetary damages are sought by the class, Rule 23(b)(3) is the vehicle through which to pursue those damages. *See In re Allstate Ins. Co.*, 400 F.3d 505, 506-07 (7th Cir. 2006) (discussing differences between Rule 23(b)(2) and (b)(3) classes).

### a. Plaintiffs' Claims Can Be Certified Under Rule 23(b)(2).

Class certification is proper under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is intended for suits where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.

Plaintiffs here seek several types of class-wide injunctive and other equitable relief under section 502(a)(2) and in the alternative under 502(a)(3). In their Complaint, Plaintiffs ask the Court to determine that the Plan currently operates in violation of ERISA, and ask the Court to change that in the future. They ask the Court to "declare that the Defendants have breached their fiduciary duties," to "order the Defendants to make good to the Plan all losses that the Plan incurred," to "enjoin the fiduciaries who have breached their duties from future breaches of ERISA," and to award "equitable restitution or other available equitable relief against the Defendants." (*See* Complaint, at 31-32 (requesting relief).) This is "group-wide relief" seeking to redress "group-wide injury." Indeed, as noted above, ERISA § 502(a)(2) *compels* the Plaintiffs to bring an action for "group-wide" relief. *Russell*, 473 U.S. at 144.

For this reason, federal courts have determined that ERISA suits seeking to increase the amount of benefits provided to all plan participants are properly certified under Rule 23(b)(2). In *Global Crossing*, the court found that the relief sought by the class members – the losses experienced in a 401(k) plan's company stock fund as a consequence of the defendants' breaches of fiduciary duty – were suitable for Rule 23(b)(2) certification because the "ERISA Class Members' claims are based on alleged conduct that purportedly applies generally to the ERISA Classes." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. at 453.

In support of its granting certification pursuant to Rule 23(b)(2), the *Global Crossing* court gave examples of the defendants' actions that were generally applicable to the class: they allegedly failed "reasonably to evaluate whether [company] stock was a prudent investment for the plans, fail[ed] to monitor the plans' fiduciaries, fail[ed] to disclose material information about [company] stock as a retirement investment, and fail[ed] properly to administer the Change of

18

Control Severance Plan." *Id.* Plaintiffs allege that here, too, Defendants acted or failed to act on a class-wide basis by failing to make sure that the fees and expenses charged were reasonable (*See* Complaint, ¶¶ 76-77), failed to monitor the Plan's fiduciaries (Complaint, ¶ 22), and failed to disclose material information about the fees and expenses charged to the Plan (Complaint, ¶¶ 80, 83-85). For these reasons, the claims for injunctive relief should be certified pursuant to Rule 23(b)(2).

> **b.      Plaintiffs' Legal Claims Should Be Certified Under Rule 23(b)(3).**

Plaintiffs have sought non-equitable relief under section 502(a)(2) and seek certification of their legal damages claims under Rule 23(b)(3). Certification under this section is appropriate because common questions of law or fact predominate and a class action is the superior method of adjudicating the claims at issue. Fed. R. Civ. P. 23(b)(3).

> **1.      Common Issues Predominate**

Rule 23(b)(3)'s requirement that common issues of law or fact predominate is closely related to the Rule 23(a)(2) "commonality" requirement. This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Common issues predominate when the issues "subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 746-47 (7th Cir. 2001) (citing the "predominance of common over individual disputes and superiority of Class disposition" as "the requirements of Rule 23(b)(3)"). Common issues predominate when "the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis." *Roth v. Aon Corp.,* 238 F.R.D. 605, 608 (N.D. Ill. 2006).

In an ERISA breach-of-fiduciary duty suit, the court's focus is on the defendants' behavior and the overarching question is whether the defendants breached their duty. *Rogers,* 2006 WL 794734, at *10; *In re ADC Telecomm. ERISA Litig.,* 2005 WL 2250782, at * 4 ("The focus of ERISA breach of fiduciary duty litigation is generally on the actions of the defendant, even when misrepresentations are alleged, individual inquiry into each of the plaintiffs is unnecessary."). Therefore, suits alleging "standardized conduct by the defendants in connection with established

19

fiduciary principles established by ERISA are generally appropriate for class action." *See Von Moore v. Simpson*, No. 96 CV 2971, 1997 WL 570769, at * 6 (N.D. Ill. Sep. 6, 1997).

The Plan's fiduciaries do not select investment options or service providers for each participant individually, but for the entire Plan. The service providers do not enter administration and recordkeeping contracts with each Plan participant, but with the Plan as a whole. The investment managers do not charge fees and expenses based on negotiations with each participant, but on a fund-wide basis so that they are applicable to all Plan participants. *See Rogers*, 2006 WL 794734, * 12 (finding predominance and certifying a Rule 23(b)(3) class of § 502(a)(3) equitable claims where the plaintiff claimed that "the defendants breached their fiduciary duties ... by virtue of the way they managed or failed to manage the Plan."). Even if some issues requiring individualized treatment were to arise – unlikely in this case – those issues would be the sideshow, not the main event. *See also Von Moore*, 1997 WL 570769, at * 6 (common issues of ERISA fiduciaries' breach were predominant; class certified pursuant to Rule 23(b)(3)).

### 2. A Class Action Is The Best Means Of Resolving Plaintiffs' Claims.

Finally, a class action is the superior method of litigating these claims. Rule 23(b)(3)'s "superiority" requirement asks the Court to consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Class certification is "superior" when the "class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citations omitted).

Plaintiffs have already described the administrative nightmare that would result from the litigation of separate suits by each class member. The Court – or rather the federal court system – would suffer headaches of its own if the participants unleashed individual suits across the country.

20

Concentration of all litigation about the Plan's fiduciaries and their duties in this forum would undeniably save the parties and the courts considerable effort by resolving questions about the operation of the Plan with one decision, rather than having to sort out the effect of multiple and possibly contradictory orders. Plaintiffs are also not aware of any other actions presenting the issues before this Court. Thus, it is extremely desirable to concentrate the litigation of these common issues in this Court. *See also Rogers*, 2006 WL 794734, at * 12. Further, because the common issues predominate, the action will be manageable. *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 190 (S.D.N.Y. 2005) (citing predominance as evidence of manageability). Rule 23(b)(3) certification is thus proper.

## III.  **CONCLUSION**

For these reasons, the Plaintiffs' motion should be granted. The Court should certify the Class under Rule 23(b)(1) and appoint the named Plaintiffs as representatives of their respective class. In the alternative, the Court should certify the Plaintiffs' claims for injunctive and declaratory relief under Rule 23(b)(2) and their claims for legal relief under Rule 23(b)(3). The Court should also designate Plaintiffs' law firm, Schlichter, Bogard & Denton, as Class Counsel pursuant to Rule 23(g).

Respectfully submitted,

/s/ Elizabeth J. Hubertz
Jerome J. Schlichter
Elizabeth J. Hubertz
Nicole Bolton
Heather Lea
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street
Suite 900
St. Louis, MO 63102
ehubertz@uselaws.com
Tel:    314-621-6115
Fax:    314-621-7151
Lead Counsel for Plaintiffs

21

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2007, I electronically filed the **MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Anne E. Rea
area@sidley.com

Mark B. Blocker
mblocker@sidley.com

Eric S. Mattson
emattson@sidley.com

**Attorneys for Defendants**

/s/  Elizabeth J. Hubertz
Attorney for Plaintiffs

22