

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN LOOMIS, DEBRA COGSWELL, RON WELTE, WAYNE JOHNSON, and ED SALFEDLER, individually and on behalf of all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELON CORPORATION; WILLIAM BERGMAN, in his capacity as Exelon Corporation's Director of Employee Benefit Plans and Programs; COMPENSATION COMMITTEE OF EXELON CORPORATION'S BOARD OF DIRECTORS; M. WALTER D'ALESSIO; ROSEMARIE B. GRECO; RONALD RUBIN; RICHARD L. THOMAS; EMPLOYEE SAVINGS PLAN INVESTMENT; RISK OVERSIGHT COMMITTEE OF THE EXELON CORPORATION BOARD OF DIRECTORS; SUE LING GIN; JUDGE NELSON A. DIAZ; EDGAR D. JANNOTTA; WILLIAM C. RICHARDSON, Ph.D.; JOHN W. ROGERS, JR.; and RONALD RUBIN, <br><br> Defendants. | No. 06 C 4900 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On September 11, 2006, Plaintiffs – Brian Loomis, Debra Cogswell, Ron Welte, Wayne Johnson, and Ed Salfedler, individually and on behalf of all those similarly situated – filed a two-count Complaint against Defendants – Exelon Corporation; William Bergman, in his capacity as Exelon Corporation's Director of Employee Benefit Plans and Programs; the

Compensation Committee of Exelon Corporation's Board of Directors; M. Walter D'Alessio; Rosemarie B. Greco; Ronald Rubin; Richard L. Thomas; Employee Savings Plan Investment; Risk Oversight Committee of the Exelon Corporation Board of Directors; Sue Ling Gin; Judge Nelson A. Diaz; Edgar D. Jannotta; William C. Richardson, Ph.D.; John W. Rogers, Jr.; and Ronald Rubin. The Complaint alleges that Exelon and other individuals and entities associated with that corporation have breached their fiduciary duties to the participants in the Exelon Employee Savings Plan (the "Plan"). (Compl. at ¶¶ 18-22, 94, 98). Plaintiffs allege, *inter alia*, that Defendants violated ERISA § 502(a)(2) and (a)(3) by causing, or allowing investment managers and other service providers to charge, unreasonable fees to the Plan and by failing to disclose those fees to participants in the Plan. (Compl. at ¶¶ 53-80). Presently before the Court is Plaintiffs' Motion for Class Certification.[1]

## BACKGROUND

Defendant Exelon offers a 401(k) plan to its employees, known as the Exelon Employee Savings Plan. The named Plaintiffs are all participants in the Plan. The administrative costs of running the Plan are charged across the board to all Plan participants. As the Summary Plan Description explains, "Your account balance will be charged with a proportionate share of the general expenses of administering the [Plan]." For example, the Plan reported paid fees to "Fidelity Institutional Operations Company" for record keeping. Participants are also charged

---

[1] Defendants assert that the Plaintiff-class should not be certified because 502(a)(2) inures to the benefit of the plan as a whole, not individual participants, citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (*Russell*), and cases interpreting *Russell*. Essentially, the Defendants' argument challenges the ability of any of the Plaintiffs, named or otherwise, to bring the claims under § 502(a)(2) in this case. However, this issue is best addressed in a motion to dismiss or for summary judgment, not a motion for class certification. Thus, Defendants' claims are not addressed here.

2

"fund management fees," which are subtracted from the returns on their investment in a particular fund before the returns are reported to them. A portion of these fund management fees is used to pay the general expenses of administering the Plan. For example, the Administrative Fee Agreement, entered into by the Plan Sponsor/Administrator of the Exelon Corporation Savings Plan (T. Rowe Price Services, Inc. and T. Rowe Price Funds), provides that a designated percent of the fees paid by the Plan to T. Rowe Price mutual funds will be used to pay fees to other entities for the Plan's administrative expenses, such as record-keeping expenses. Thus, the Plan's administrative expenses consist of both: (1) the "general expenses of administering the [Plan]", described in the Plaintiffs' Complaint as "Hard Dollar" expenses; and (2) the portion of the "fund management fees" that is also used to cover the Plan's administrative expenses, described in the Plaintiffs' Complaint as "Revenue Sharing Payments."

Specifically, Plaintiffs allege that the persons identified as fiduciaries in the Complaint breached their fiduciary duties by causing or allowing unreasonable and excessive administrative fees and expenses to be charged against the assets of the Plan (and, thus, to the participants) by failing to make prudent investment decisions in the selection and retention of funds and by failing to ensure that the Plan's assets were used solely for the exclusive purpose of providing benefits to participants.

## **LEGAL STANDARD**

"The Federal Rules of Civil Procedure provide the federal district court with broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (*Keele*) (quotation and citation omitted). In determining whether the class-action requirements are met, "a judge should make whatever

3

factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (*Szabo*). The party seeking class certification has the burden of demonstrating certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

To obtain class certification, Plaintiff must demonstrate that the proposed defense classes satisfy all four elements of Federal Rule of Civil Procedure 23(a), which include: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The defense classes must also satisfy at least one of the three provisions under Federal Rule of Civil Procedure 23(b); Plaintiffs claim to have met the requirements of Rule 23(b)(1). While class members must be provided with an opportunity to opt out of a class action certified under Rule 23(b)(3), "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2). Under this rule, plaintiffs are not required to provide putative class members with notice or an opportunity to opt out of the class certified under Rule 23(b)(1). *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000).

## ANALYSIS

To receive class certification, Plaintiffs must satisfy all four elements of Rule 23(a), which include: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs must also satisfy at least one of the three provisions under Rule 23(b).

*The Requirements of Rule 23(a)*

Rule 23(a)(1) requires that the class be so numerous that joinder of all the members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs do not know the precise number of class members. A plaintiff does not need to demonstrate the exact number of class members as long as

4

a conclusion is apparent from good-faith estimates. *Peterson v. H & R Block Tax Servs.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997). According to Form 5500 that was filed in 2004, there were 23,291 participants. Rule 23 does not specify a minimum number of class members that must exist before a class can be certified; however, classes have been certified with as few as forty plaintiffs. *Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302, 307 (N.D. Ill. 1995). ERISA classes have been certified with less than 500 plaintiffs. *Zielinkski v. Pabst Brewing Co.*, No. 04-C-0385, 2005 WL 3240590 (E.D. Wis. Nov. 30, 2005). Here, with publically available documents suggesting that the number of class members is in the thousands, the Plaintiffs clearly met the numerosity requirement.

Commonality exists if the class members share common questions of law or fact. The requirement is usually satisfied when a common nucleus of operative facts unites a class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (*Rosario*). The presence of some factual variations among the class members does not defeat commonality, so long as there is at least one question of law or fact common to the class. *Rosario*, F.2d at 1017; *Keele*, 149 F.3d at 594. In this ERISA class action, common issues of fact are presented here. Plaintiffs challenge the reasonableness of administrative fees paid by the Exelon Plan. These fees are paid by Plan participants – proposed class members – and each participant had this issue in common. Further, there are common issues of law. ERISA describes the duties of a plan sponsor and its delegates toward the employees who participate in 401(k) plans. Section 403(c) requires that the Plan's assets be used "solely for the administering of the plan." 29 U.S.C. § 1103(c)(1). ERISA also provides that those acting in a fiduciary capacity toward the Plan and the Plan participants must discharge their fiduciary duties "solely in the interest of the participants and beneficiaries."

29 U.S.C. § 1104(a)(1). The fiduciaries must act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). They must also discharge those duties "with care, skill, prudence, and diligence" that a "prudent man" acting in a similar capacity would use under similar circumstances. 29 U.S.C. § 1104(a)(1)(B). The Plan's fiduciaries owe these duties to all Plan participants, including the named Plaintiffs. Thus, common issues of law predominate. Indeed, in the Plaintiffs' Complaint at Paragraph 27, Plaintiffs identify 14 common issues of law and/or fact, including whether the Defendants were Plan fiduciaries, whether Defendants breached one or more fiduciary duties, or whatever the alleged breaches of fiduciary duty resulted in damage to the Plan. Plaintiffs have satisfied Rule 23(a)(2)'s requirements.

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2). *Ruiz v. Stewart Associates, Inc.*, 171 F.R.D. 238, 242 (N.D. Ill. 1997). A plaintiff's claim is typical if it: (1) arises from the same event, practice, or course of action that gives rise to the claims of other class members; and (2) the claims of the plaintiff and the class members are based on the same legal theory. *Rosario*, 963 F.2d at 1018. Here, Plaintiffs have alleged that Defendants caused or allowed excessive or unreasonable fees to be charged to the Plan as a whole. The loss amount attributable to the allegedly excessive fees are likely to differ from participant to participant. However, "individual damages will not defeat a named plaintiff's typicality." *Alexander v. Q.T.S. Corp.*, No. 98-C-3234, 1999 WL 573358 at *6 (N.D. Ill. 1999).

The class representatives must "fairly and adequately protect the interests of the class". Fed. R. Civ. P. 23(a). Two factors are used to determine whether the class is adequately

represented. First, no conflicts of interest must exist between the named plaintiffs and the class members. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D. Ill. 1996). Second, the named plaintiff's counsel must adequately protect the interests of the class by being qualified, experienced, and generally able to conduct the proposed litigation. *Rosario*, 963 F.2d at 1018. All the named Plaintiffs are participants in the Plan they seek to represent, and all have a financial stake in the Plan. All Plaintiffs have allegedly been injured as the result of the Defendants' practices and allegedly will continue to be so harmed as long as their money remains invested in the Plan. The relief sought by the named Plaintiffs would affect the Plan as a whole; and because any monetary recovery in this action would go to the Plan, the interests of the named Plaintiffs are aligned with those of the non-named class members. Further, a review of the information submitted regarding the law firm and the lawyers representing the proposed class supports a finding that they are qualified to represent the class.

*The Requirements of Rule 23(b)*

Here, both the Plaintiffs and the Defendants agree that if a class is certified – which Defendants assert it should not be – then certification is most appropriate under Rule 23(b)(1)(B). Rule 23(b)(1)(B) provides for certification where:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

Fed. R. Civ. P. 23. Typically, class actions certified under Rule 23(b)(1)(B) include suits to reorganize fraternal benefit societies, actions by shareholders to declare a dividend, actions

charging a breach of trust by a fiduciary that similarly affects a large class of beneficiaries such that an accounting is necessary, and limited-fund class actions seeking to aggregate claims against a fund that are insufficient to satisfy the claims of all the class members. *Ortiz v. Fibre Board Corp.*, 527 U.S. 815, 834 (1999) (*Ortiz*). In class actions certified under Rule 23(b)(1)(B), "the shared character of the rights claimed or relief awarded entails that any adjudication disposes of, or substantially affects, the interest of absent class members." *Ortiz*, 527 U.S. at 833-34. Further, the failure to provide notice and the opportunity to opt out could prevent putative class members from asserting their individual factual differences. Thus, the rule is interpreted narrowly. *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 584 (N.D. Ill. 2005), *citing Ortiz*, 527 U.S. at 833 n.13, 842.

Here, Plaintiff's ERISA claims properly fall into the category of "paradigmatic" Rule 23(b)(1)(B) claims; and the certification of a Rule 23(b)(1)(B) class is appropriate. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("Because of ERISA's distinctive 'representative capacity' and remedial provisions, ERISA litigation of this nature presents paradigmatic example of a (b)(1) class."). The named Plaintiffs, and the members of the class they seek to represent, are 401(k) Plan participants who claim that Defendants breached their ERISA-mandated duties, as described above. Where, as here, plaintiffs seek to bring suit in a representative capacity to recover losses for a plan as a whole based on actions that took place on a plan-wide basis, certification of a Rule 23(b)(1)(B) class is appropriate.

*Class Definition*

Plaintiffs seek mandatory certification of the following class: "All persons, excluding the Defendants, the Committees and/or other individuals who are or may be liable for the conduct described in the Complaint, who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future." The Plaintiffs submit that the proposed class consists of approximately 23,291 Plan participants.

Defendants assert that the proposed class is overly broad. First, Defendants assert that future Plan participants should be excluded. With respect to future participants, Defendants assert that these participants lack standing under Article III of the U.S. Constitution because these are only mere "threatened" ERISA violations. However, as the Plaintiffs noted, citing *Hodges v. Public Bldg. Comm'n*, No. 93 C 4328, 1994 WL 603105 (N.D. Ill. Oct. 31, 1994) (*Hodges*), future class members are often included in class definitions. Indeed, as the *Hodges* court stated, "[t]here is no shortage of cases which have certified classes incorporating future class members into their definition." *Hodges*, 1994 WL 603105 (N.D. Ill. Oct. 31, 1994) (listing ten such cases). Further, the inclusion of future class members is particularly appropriate here because Plaintiffs request an injunction prohibiting the continuation of current practices; and this injunctive relief, if granted, would affect not just present participants, but future participants, as well.

Next, Defendants assert that former Plan participants should be excluded from the class definition. Defendants assert that former employees are only considered participants within the meaning of Sections 502(a)(2) and (a)(3), only if: (1) they have a reasonable expectation of returning to covered employment; or (2) they have a colorable claim to vested benefits under an

ERISA plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Plaintiffs assert that, here, former participants in Defendants' Plan have standing to sue under ERISA § 502(a)(2) and § 502(a)(3) because they have a colorable claim to "a benefit of any type," namely, the full value that their 401(k) funds would have reached if Defendants had not breached their fiduciary duties. As "colorable claim" language has been broadly interpreted – including by the Seventh Circuit, which stated that former employees are participants if they have a colorable claim that they cashed out of the plan "at a smaller benefit than they were due," *Clair v. Harris Trust & Savings Bank,* 190 F.3d 495, 497 (7th Cir. 1999) – the Court will not limit the proposed class definition at this point, holding these factual issues for resolution at the appropriate time.

Defendants also assert that the class period should begin no earlier than September 11, 2000. Defendants assert that Plaintiffs' claims – and, thus, the Plaintiff class – should be limited to claims filed six years prior to the date the instant lawsuit was filed, citing 29 U.S.C. § 1113(a). However, as even Defendants acknowledge, "in the case of fraud or concealment," ERISA claims are not barred six years after the breach but, rather, six years after "the date of discovery of such breach or violation." 29 U.S.C. § 1113(1). The Defendants assert that no fraud was alleged. However, a reading of the Plaintiffs' Complaint does not support Defendants' contention; and, at this stage, the Court will not so limit the class definition. At the certification stage, courts are not to examine the merits of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974).

Finally, Defendants assert that Plan participants who signed releases in favor of Exelon when they terminated employment with Exelon should be excluded from the class definition. These Plan participants should not be excluded from the class definition for two reasons. First,

10

releases that participants may have signed with respect to their own claims could not release claims they might bring on behalf of the Plan. *See, e.g., Bowles v. Reade*, 198 F.3d 752, 759-60 (9th Cir. 1999). Further, the sample release that Defendants have provided may not release all claims brought on behalf of the participants individually. For one reason, the release does not waive claims that were unknown at that time. *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1115 (7th Cir. 1990) (general releases do not apply to claims not known to or contemplated by the parties at the time of the release). As noted above, these factual issues are not properly before the Court at this time.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Certify is granted. A Plaintiff class under Rule 23(b)(1) is certified as follows: All persons, excluding the Defendants, the Committees and/or other individuals who are or may be liable for the conduct described in the Complaint, who are or were participants or beneficiaries of the Exelon Employee Savings Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Exelon Employee Savings Plan in the future.

Dated: June 26, 2007

JOHN W. DARRAH
United States District Court Judge

11