## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**BRIAN LOOMIS, DEBRA COGSWELL, RON WELTE, and WAYNE JOHNSON, individually and on behalf of the Plan and all those similarly situated**

      **Plaintiffs,**

**v.**

**EXELON CORPORATION, WILLIAM BERGMAN in his capacity as Exelon Corporation's Director of Employee Benefit Plans and Programs; COMPENSATION COMMITTEE OF EXELON CORPORATION'S BOARD OF DIRECTORS; M. WALTER D'ALESSIO, ROSEMARIE B. GRECO, RONALD RUBIN AND RICHARD L. THOMAS, all in their capacities as members of the Compensation Committee, EMPLOYEE SAVINGS PLAN INVESTMENT COMMITTEE; RISK OVERSIGHT COMMITTEE OF THE EXELON CORPORATION BOARD OF DIRECTORS; AND SUE LING GIN, JUDGE NELSON A. DIAZ, EDGAR D. JANNOTTA, WILLIAM C. RICHARDSON, PH.D., JOHN W. ROGERS, JR. AND RONALD RUBIN, all in their capacities as members of the Risk Oversight Committee,**

      **Defendants.**

**CASE NUMBER: 06-cv-4900**

**Hon. John W. Darrah**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

### FIRST AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1.      In this action, pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), Plaintiffs and

Class Representatives, on behalf of all similarly situated participants and beneficiaries of the

Exelon Corporation Employee Savings Plan, Plan #003 (the "Plan"), seek to recover the losses

suffered by the Plan on a plan wide basis and to obtain injunctive and other equitable relief for the Plan from the Plan's fiduciaries based upon their breaches of fiduciary duties.

2.     As set forth in detail below, the fees and expenses paid by the Plan, and thus borne by Plan participants, were and are unreasonable and excessive in light of the services received; not incurred solely for the benefit of the Plan and its participants. By subjecting the Plan and its participants to these excessive fees and expenses, and by other conduct set forth below, the Defendants violated their fiduciary obligations under ERISA.

## PARTIES, JURISDICTION AND VENUE

### Plaintiffs

3.     Plaintiff and Class Representative Brian Loomis is a resident of Illinois, living and working in the Northern District of Illinois.

4.     Plaintiff and Class Representative Debra Cogswell is a resident of Illinois, living and working in the Northern District of Illinois.

5.     Plaintiff and Class Representative Gary Welte is a resident of Illinois, living and working in the Northern District of Illinois.

6.     Plaintiff and Class Representative Wayne Johnson is a resident of Illinois, living and working in the Northern District of Illinois.

7.     Each Plaintiff and Class Representative is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

8.     Defendant Exelon Corporation (Exelon) is a corporation with its headquarters in Chicago, Illinois. It provides electric and gas utility services to consumers in Illinois and Pennsylvania. It is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. §

1002(16)(B), an administrator of the Plan within the meaning of ERISA §3(16)(A), 29 U.S.C. §

1102(16)(A), and is the employer and principal of the Plan's administrator and one or more of its

members.  It is a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A).

9.     Defendant William Bergman, Exelon Corporation's Director of Employee Benefit

Plans and Programs, is the current Plan Administrator within the meaning of ERISA § 3(16)(A),

29 U.S.C. § 1002(16)(A), and is a "named fiduciary" to the Plan within the meaning of ERISA §

402(a)(2), 29 U.S.C. § 1102(a)(2).  He has responsibility for all matters relating to the Plan

except for investments, benefits appeals, and the trust fund. He is also a fiduciary with respect to

the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. § 1002(21)(A).

10.     Defendant Compensation Committee of Exelon Corporation's Board of Directors

has the responsibility for appointing, monitoring, and/or removing the Plan Administrator.  In

this capacity, the Compensation Committee and its members are fiduciaries to the Plan within

the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  The members of the Compensation

Committee are Directors M. Walter D'Alessio, Rosemarie B. Greco, Ronald Rubin and Richard

L. Thomas.

11.     Defendant Employee Savings Plan Investment Committee currently has

responsibility for all matters relating to the investments held by the Plan and its participants.  The

members of the Investment Committee are William Bergman, as Director of Employee Benefit

Plans and Programs, Exelon Corporation's Director of Investments, and Exelon Business

Services Company's Manager of Accounts Payable.  The Investment Committee is a "named

fiduciary" to the Plan within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2),  and is

a fiduciary to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

12.     Defendant Risk Oversight Committee of the Exelon Corporation Board of Directors has responsibility for appointing, monitoring, and removing the members of the Investment Committee.  The Members of the Risk Oversight Committee are the independent directors of Exelon Corporation:  Sue Ling Gin, Judge Nelson A. Diaz, Edgar D. Jannotta, William C. Richardson, Ph.D., John W. Rogers, Jr. and Ronald Rubin.  In this capacity, they are all fiduciaries to the Plan within the meaning of ERISA § (21)(A), 29 U.S.C. § 1002(21)(A).

13.     Defendants, including the individually named independent directors identified above, had a duty to review each other's decisions and of their predecessor fiduciaries and to take reasonable steps to remedy any breaches of which they were and/or should have been aware, including seeking damages caused by such breaches.

### Jurisdiction And Venue

14.     Plaintiffs seek relief on behalf of the Plan through the mechanisms found in ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, 29 U.S.C. § 1132.  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

15.     All Defendants are subject to service of process issued from this Court pursuant to 29 U.S.C. § 1132(e)(1)(2).

16.     Venue of this action is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the injury occurred directly to Plaintiffs in this district where they live and work, because the breaches of fiduciary duty occurred in this district and because the Defendants may be found in this district.

## **The Plaintiff Class**

17.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on behalf of themselves and all similarly situated Plan participants and beneficiaries.

They seek to represent the following class (the "Class"):

> All persons, *excluding the Defendants, the Committees and/or
> other individuals who are or may be liable for the conduct
> described in this Complaint,* who are or were participants or
> beneficiaries of the Exelon Employee Savings Plan and who are,
> were or may have been affected by the conduct set forth in this
> Complaint, as well as those who will become participants or
> beneficiaries of the Exelon Employee Savings Plan in the future.

18.    Certification of this class is proper under Rule 23(a) because all of its

prerequisites are satisfied:

    a.    **Numerosity.**  The members of the Class are so numerous that joinder of all

        members is impracticable.

    b.    **Commonality.** Common issues of fact and law predominate over any issues

        unique to individual class members.  Issues that are common to all class

        members include, but are not limited to, whether the Defendants, as set forth

        in more detail in this First Amended Complaint:

        **i.**    conducted themselves with the utmost good faith, loyalty and
           fidelity; acted with the sole purpose of advancing the interests of
           the Plan, its participants and beneficiaries; scrupulously avoided all
           self interest, duplicity and  deceit;

        **ii.**    acted "solely in the interest of the participants and beneficiaries"
           and "for the exclusive purpose of: (i) providing benefits to
           participants and their beneficiaries; and (ii) defraying reasonable
           expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

        **iii.**    acted "with the care, skill, prudence and diligence under the
           circumstances then prevailing that a prudent man acting in a like
           capacity and familiar with such matters would use in the conduct

of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

iv.  Obligated the Plan to pay fees and expenses for investment management and administrative services that were unreasonable and excessive in light of the services actually provided to the Plan and when compared to lower fees which were available to a Plan of such a large size, given the economies of scale that should have been leveraged for the Plan's benefit;

v.  Failed to periodically and adequately monitor the fees and expenses they obligated the Plan to pay for investment management and administrative services;

vi.  Failed to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

vii.  Allowed investment management and administrative fees assessed against the Plan to increase as the assets in the Plan increased with no commensurate increase in the level of services being provided;

viii.  Obligated the Plan, although it is an institutional investor, to pay for investment management and administrative services at an individual investor/retail rate without receiving any additional services to offset the fact that lower fees were available to an institutional investor for the same services;

ix.  Appointed unqualified fiduciaries and failed to monitor and oversee them; allowed them to breach their fiduciary duties, and failed to terminate the fiduciaries' appointment after breaches occurred;

x.  By the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, breached their fiduciary and other ERISA-imposed obligations to the Plan, Plan participants, and members of the Class;

xi.  Are liable to the Plan and the Class for losses suffered as a result of the breaches of their fiduciary and other ERISA-imposed obligations; and

xii.  Are responsible to account for the assets and transactions of the Plan and should be charged for any transactions and payments for which they cannot account.

    c. **Typicality.** The Claims brought by the Plaintiffs are typical of those of the absent class members because:

        i.   The Defendants owed the exact same fiduciary and other ERISA-based obligations to each Plan participant and each member of the Class;

        ii.  The Defendants' breach of those obligations constitutes a breach to each participant and each member of the Class;

        iii. To the extent that there are any differences among the Class members' damages, such differences would be a product of simple mathematics based upon their account balances in the Plan. Such minimal and formulaic differences are no impediment to class certification.

    d. **Adequacy of Representation.** The Plaintiffs are adequate representatives of the absent class members and will protect such absent class members' interests in this litigation. The Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the class claims. Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

19.    Class certification is also appropriate under Rule 23(b)(1)(B), in the absence of certification, there is risk of inconsistent adjudications with respect to individual class members.

20.    Under ERISA § 409(a), 29 U.S.C. § 1109(a), fiduciaries who are liable for a breach of fiduciary duty must restore and make good all losses that resulted from such breach. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring a direct action for relief under ERISA § 409.

21.    As fiduciaries, Defendants have, at all times, owed Plaintiffs and the Plan a duty act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A). Defendants have also, at all times, been obligated to discharge their duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

### The Plan

22.     Defendants offer certain of its employees the opportunity to participate in the Plan.  The Plan is a "defined contribution plan," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34) and contains an employee stock ownership plan provision.  It is a tax-qualified plan of the type popularly known as a "401(k) plan."

23.     Under the terms of the Plan, qualified employees may contribute certain portions of their before-tax earnings to the Plan.  Exelon Corporation will match those contributions in varying percentages.  Participants are 100 percent vested in their account, including Exelon's matching contribution portion, and amounts are entirely non-forfeitable at all times.

24.     Each participant's account is credited with the participant's contributions, the participant's share of Exelon's matching and discretionary contributions, and the Plan's earnings, net of fees.

25.     Defendants are responsible for selecting, monitoring, retaining, and changing the Plan's investment funds. Participants' ability to direct their earnings into the Plan has, at all times, been limited to selection from among the menu of funds provided by Defendants.

26.     During the relevant time period, the Plan has included over 30 investment funds, but has never included a brokerage window of any sort by which participants could select investment options outside of the plan's menu of funds

27.     Since at least January 1995, Defendants obligated the Plan, through its participant accounts, to pay the cost of investment management, administrative, and recordkeeping services associated with the operation of the Plan. The sponsor/employer did not pay any costs associated with the Plan during this period.

28.     At all times relevant, Defendants have been responsible for selecting, monitoring, retaining and/or terminating service providers which provide investment management and administration for the Plan.

29.     Investment management services include selection, review, and trading of investments within the Plan's funds. Administrative services include record keeping of participant account balances/activity, participant education and communication, and trustee services such as facilitating the monetary inflows and out flows of the Plan.

30.     Although Plan assets have exceeded $1 billion, the vast majority of the investment options Defendants included in the Plan were retail mutual funds, in which any individual investor outside of a 401k plan could invest at the same cost with an initial $500.00 investment.

31.     Upon information and belief, prior to 1995, Exelon paid the fees and expenses associated with the administration of the Plan.

32.     From 1995 to April 2009, Defendants retained Fidelity Management Trust Company and its related Fidelity entities ("Fidelity Management") to provide investment

management and administrative services to the Plan and shifted the payment of the fees and expenses associated with Plan administration from Exelon to the Plan and its participants.

33.     The Plan's payment to Fidelity Management's investment management and administrative services was based on a percentage of the total assets in the Plan.

34.     Plan administrative services, such as recordkeeping, do not vary with the growth of plan assets and prudent fiduciaries tie and limit these costs to a per participant basis.

35.     From 2000 to 2006, the total assets in the Plan increased over 100%, from approximately $1.5 billion to more than $3 billion.

36.     In April of 2009, after the commencement of this action and while the case was stayed, Defendants, upon information and belief, terminated Fidelity Management and entered into an arrangement with Hewitt Associates LLC  to administer the Plan for a fixed, per participant charge, instead of the asset based charge previously assessed by Fidelity Management, which Plaintiffs allege was excessive.

## COUNT I
### Breach of Fiduciary Duty – ERISA §404(a)(1) and §502(a)(2)
### Excessive Investment Management Fees

37.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 36 as though fully set forth here.

38.     Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

        a.     to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and  deceit;

b.  to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

c.  to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

d.  to insure, at all times, that Plan assets are *never* used for the benefit of the employer;

e.  to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan;

f.  to assess, screen, and monitor the prudence of each and every investment option made available in the Plan; and

g.  to properly monitor, benchmark and/or compare the costs for investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features.

39.  Defendants, including the individually named independent board of directors, breached these aforementioned fiduciary duties in that they failed:

a.  to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

b.   to properly monitor, benchmark and/or compare the costs for investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

c.   to establish, implement, and follow procedures to properly and prudently determine whether investment management fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

d.   to ensure that the Plan, an institutional-sized investor, did not pay for investment management services at individual investor/retail rates without receiving any additional services beyond that received by non-institutional investors;

e.   to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

f.   to ensure that investment management fees assessed against the Plan did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

g.   to enter into agreements with third parties which did not obligate the Plan to pay unreasonable and excessive fees and expenses for investment management services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

h.  to limit investment management fees to a reasonable amount and caused the
    plan to pay excessive fees, when they included high priced retail mutual funds
    and/or other funds as Plan investment options, including the following:

    PIMCO Total Return

    T. Rowe Price High Yield

    Fidelity Contrafund

    Fidelity Dividend Growth

    Fidelity Growth Company

    Fidelity Low Price Stock

    Fidelity Magellan

    Legg Mason Value Trust

    T. Rowe Price Capital Appreciation

    MSI Fund, Inc.

    Fidelity Freedom Income

    Fidelity Freedom 2000, 2010, 2020, 2030, and 2040 funds

    Brinson Diversified

    Franklin Small Cap Growth

    White Oak Growth

    Fidelity Asset Manager

    Managed Income Fund

    UBS Diversified

    American Beacon Fund Large Cap Value

    Royce Pennsylvania Fund

as opposed to less expensive institutional share classes of the same or similar
mutual funds, or other investment structures, including separate accounts and/or
commingled funds, which are available to provide the same or substantially
similar investment management service to large institutional investors like the
Plan at a substantially lower cost than retail mutual funds;

   i. to consider the size and growth of the Plan over time in terms of both assets
and number of participants relative to the cost of the investment management
services provided to the Plan;

   j. to leverage the size of the Plan, utilizing economies of scale, and, instead,
obligated the Plan to pay for a level of investment management and
administrative services that were generally no better than the level of services
provided to small, non-institutional investors;

   k. to consider the expected performance of the actively managed retail mutual
funds in the Plan, net of fees, compared to available alternatives;

   l. to review the prior decisions of other and/or predecessor fiduciaries and take
reasonable steps to remedy the breaches of which they were and/or should
have been aware, including seeking damages caused by such breaches; and

40. Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Defendants
are liable to make good to the Plan for the losses it experienced as a direct result of the
Defendants' breaches of fiduciary duty and are personally liable for any other available and
appropriate equitable relief, including prospective injunctive relief and declaratory relief, and
attorney's fees.

41. As a result of Defendants' breaches, the Plan, Plaintiffs, the Class, and the Plan's participants and beneficiaries have suffered financial losses and damages, including not only the payment of excessive investment management fees, but also in the underperformance of these imprudent excessively priced funds. The underperformance was not based merely on the daily fluctuations of the market - but as a result of Defendants' failure to exercise prudence in selecting appropriate investment funds suitable for a large retirement plan. Had prudent options been selected, this underperformance would not have occurred.

<u>COUNT II</u>
**Breach of Fiduciary Duty – ERISA §404(a)(1) and §502(a)(2)**
**Excessive Administrative Fees**

42. Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 41 as though fully set forth here.

43. Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

a. to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and deceit;

b. to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

c. to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

    d.   to insure, at all times, that Plan assets are *never* used for the benefit of the employer;

    e.   to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan; and

    f.   to properly monitor, benchmark and/or compare the costs for administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features.

44.    Defendants breached these aforementioned fiduciary duties in that they failed:

    a.   to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

    b.   to properly monitor, benchmark and/or compare the costs for administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

    c.   to establish, implement, and follow procedures to properly and prudently determine whether administrative fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

d.   to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

e.   to ensure that the Plan, an institutional-sized investor, did not pay for administrative services at individual investor/retail rates without receiving any additional services beyond that received by non-institutional investors;

f.   ensure that administrative fees assessed against the Plan did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

g.   to avoid entering into agreements with third parties which obligated the Plan to pay unreasonable and excessive fees and expenses for administrative services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

h.   to limit the Plan's obligation to pay no more than reasonable fees and expenses for administrative services because Defendants allowed the fees for administrative services to be based on the amount of assets in the Plan, which was excessive and unreasonable when compared to what was and is available to plans of similar size. Thus, as the assets in the Plan grew substantially from 1995 to 2009, the fees and expenses paid by the Plan for administrative services also increased without any commensurate increase in the level or amount of administrative services provided;

    i.   to consider the size and growth of the Plan over time in terms of both assets and number of participants relative to the cost of the administrative services provided to the Plan;

    j.   to leverage the size of the Plan, utilizing economies of scale, and, instead, obligated the Plan to pay for a level of administrative services that were generally no better than the level of services provided to small, non-institutional investors; and,

    k.   to review the prior decisions of other and/or predecessor fiduciaries and take reasonable steps to remedy the breaches of which they were and/or should have been aware, including seeking damages caused by such breaches.

45.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Defendants are liable to make good to the Plan for the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

46.    As a result of Defendants' breaches, the Plan, Plaintiffs, the Class, and the Plan's participants and beneficiaries have suffered financial losses and damages, including the payment of excessive administrative fees, attorneys' fees, interest and expenses.

## COUNT III
## Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)

47.    Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 46 as though fully set forth here.

48.    As an alternative and/or in addition to relief sought in Counts I and II, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3), under

which a participant may enjoin any act which violates ERISA or may obtain other appropriate

equitable relief to redress such violations or enforce the terms of ERISA.

49.     Defendants are the primary fiduciaries of the Plan and occupy a position of

trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants

and beneficiaries.

50.     Defendants have exclusive discretion and control over the Plan's assets and

are strictly obligated to exercise that control for the exclusive purposes of providing benefits to

participants in the Plan and their beneficiaries and defraying reasonable expenses of

administering the Plan.

51.     As set forth in detail above, the Defendants have caused and/or allowed the

Plan to pay – directly and indirectly – excess fees and expenses to Plan service providers.

Litigating and resolving these issues will involve identifying and reconciling multiple transfers,

payments, and flows of Plan assets that occurred while such Plan assets were within Defendants'

possession and control.

52.      Defendants, and not the Plaintiffs, are the entities which have and/or should

have in their possession specific and detailed information regarding how Plan assets have been

managed and disbursed in this regard.

53.     An accounting is a particularly appropriate remedy in circumstances where, as

here, the underlying action and accounts are so complicated that a normal action for a fixed sum

may not be practical.

54.     In such an accounting, in light of their possession and control of Plan assets

and information about how Plan assets have been applied and distributed, Defendants should

bear the burden of identifying/disclosing all Plan transactions and demonstrate their propriety.

55.     Accordingly, the Court should order that the Defendants, at their cost, render an accounting of all transactions, disbursements and dispositions occurring in connection with, and/or in respect of, the Plan and its assets.

56.     Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

57.     Plaintiffs respectfully request that the Court charge/surcharge against the Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

58.     Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above, and to cause them to cease so that the Plan's participants and beneficiaries receive the full benefit of their retirement savings in the future.

59.     To the extent that it finds that any of the terms of the Plan are in violation of ERISA, Plaintiffs request that the Court reform the terms of the Plan so that it is consistent with the law and order any relief that may flow to the Plan from such reformation.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, on behalf of themselves, the Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court enter judgment against all Defendants on all Counts and:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- find and adjudge that Defendants are personally, jointly and severally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- award actual damages to the Plan in the amount of its monetary losses;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and cause the Defendants to disgorge such monies and return them to the Plan;

- reform the Plan documents so that they conform with the provisions of ERISA and order relief to the Plan flowing from such reformation;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- require Defendants to render an accounting as set forth above;

- assess a surcharge against Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- award to the Plaintiffs and the Class their attorneys' fees and costs pursuant to ERISA § 502(g);

- order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund doctrine;

- order equitable restitution or other available equitable relief against the Defendants;

- order the payment of interest to the extent it is allowed by law;

- a trial by jury on any and all claims for which such is allowable[1] or, alternatively, empanel an advisory jury; and

- grant any other and further relief the Court deems appropriate.

**Dated August 19, 2009**

**/s/ Nelson G. Wolff**
Jerome J. Schlichter, 02488116
jschlichter@uselaws.com
Nelson G. Wolff, 6211943
nwolff@uselaws.com
Troy A. Doles, 6242803
120 W. Main Street, Suite 208
Belleville, IL 62220

100 South Fourth Street, Suite 900
St. Louis, MO 63102
Tel:    314-621-6115
Fax:    314-621-7151

---

[1]  Mindful that the Court struck the request for jury trial in the original Complaint (Doc. 57), Plaintiffs' reassert this request to preserve their rights on appeal.

## CERTIFICATE OF SERVICE

This is to certify that on August 19, 2009, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send e-mail notification of such filing to the below-referenced e-mail addresses:

Anne E. Rea
Mark B. Blocker
Eric S. Mattson
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
area@sidley.com
mblocker@sidley.com
emattson@sidley.com

**Attorneys for Defendants**

     **/s/ Nelson G. Wolff**
Nelson G. Wolff