UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN LOOMIS, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>EXELON CORPORATION, *et al.*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06 CV 4900<br><br>Judge John W. Darrah |

**MEMORANDUM OPINION AND ORDER**

This case arises out of alleged violations of 29 U.S.C. § 1001 *et seq.* of the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging breaches of fiduciary duties. This case comes before the Court on the Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Motion to Dismiss is granted.

**BACKGROUND**

Plaintiffs Brian Loomis, Debra Cogswell, Ron Welte, and Wayne Johnson ("Plaintiffs") are all participants in the Exelon Corporation Employee Savings Plan #003 (the "Plan"). The Plan is a defined contribution, individual account ERISA plan qualified under 26 U.S.C. 401(k) of the Internal Revenue Code. Plaintiffs' claims arise from payment of allegedly excessive fees for services provided by the Plan. Specifically, Plaintiffs allege that Exelon Corporation and various individuals who allegedly have responsibility for overseeing the Plan ("Defendants") breached their fiduciary duty under ERISA by providing investment options that required the payment of excessive fees.

On June 20, 2007, the Western District Court of Wisconsin dismissed *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 977 (W.D.Wis. 2007) with prejudice. As both parties acknowledged, the *Hecker* ruling would significantly impact this case; the Court therefore entered a stay to allow the Seventh Circuit to review the *Hecker* plaintiffs' argument.

On February 12, 2009, the Seventh Circuit affirmed the dismissal of *Hecker* on all grounds with prejudice. *Hecker v. Deere & Co.*, 556 F.3d 575, 578 (7th Cir. 2009) (*Hecker*). Subsequently, Plaintiffs requested that the stay in this case be continued pending a ruling on the petition for rehearing in *Hecker*. On June 24, 2009, the Seventh Circuit denied rehearing and affirmed its holding. *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (order denying petition for rehearing).

The original complaint in this case had the same theories of liability as the complaint in *Hecker*. Both complaints alleged a breach of fiduciary duty under ERISA by providing investment options with fees and expenses that were excessive and by failing to disclose the fee structure to participants. (Compl. ¶ 11); *Hecker*, 556 F.3d at 578. In both complaints, the fee structure of the plan at issue is known as "revenue sharing," where payments are made from plan assets to the plan's various service providers. (Compl. ¶ 62-63); *Hecker*, 556 F.3d at 588. Moreover, both complaints made specific allegations about why the plaintiffs' claims are not barred by the safe harbor defense provided by ERISA § 404(c), 29 U.S.C. § 1104(c). (Compl. ¶ 91-96); *Hecker*, 556 F.3d at 589.

In *Hecker*, the Seventh Circuit resolved every one of these issues in favor of the defendants. (*Id.* at 592.) The court held that the defendant was not liable for selecting investment options with excessive fees. (*Id.* at 586-87.) There, the range of expense ratios offered went from .07% to just over 1%. (*Id.* at 586.) Importantly, the court noted that although

some funds may have lower ratios, "nothing in ERISA requires every fiduciary to scour the market and offer the cheapest possible fund . . . ." (*Id.*)

Additionally, the *Hecker* court held that no statute or regulation compelled the defendant to disclose the arrangement by which the 401(k) service provider received asset-based fees from the expense ratios of the investment funds. (*Id.* at 585.) Significantly, the court noted that the revenue-sharing arrangement does not affect a participant's investment decision; rather, the total fee is the "critical figure." (*Id.* at 586, 589.)

As an alternate holding, the *Hecker* court ruled that the defendants qualified for the safe harbor provided by ERISA § 404(c), 29 U.S.C. § 1104(c). (*Id.* at 587-90.) Section 404(c) provides that fiduciaries will not be liable if the plan at issue allows participants the "opportunity to exercise control over assets in their accounts . . . ." Although 404(c) is an affirmative defense, the *Hecker* court held that the plaintiffs provided unnecessary information regarding § 404(c) in their complaint that pleaded themselves out of court. (*Id.* at 588.) Specifically, the court held that the safe harbor applied because the defendant provided "a sufficient range of options so that participants have control over the risk of loss." (*Id.* at 589.)

After the Seventh Circuit issued its order denying rehearing on *Hecker*, this Court permitted the Plaintiffs to amend their complaint. The Amended Complaint removed any allegations that would implicate the safe harbor provision provided by § 404(c). Plaintiffs also made three specific changes from the original complaint. First, the Amended Complaint lists what Plaintiffs allege are "the specific services (i.e. investment management and administrative services) that resulted in excessive and unreasonable charges against the Plan." Second, Plaintiffs contend that these fees were excessive because the Plan received no additional services

for these additional fees. Finally, Plaintiffs contend that these fees were excessive because the fees were asset-based.

Accordingly, the sole issue for determination is whether Plaintiffs' Amended Complaint is distinguishable from *Hecker* to survive a motion to dismiss.

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. (*Id.*) However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2nd Cir. 2009) (*Ashcroft*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). Additionally, determining whether a complaint should survive a motion to dismiss is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1950. To survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct. (*Id.*)

**ANALYSIS**

The Seventh Circuit held in *Hecker* that a defendant did not breach its fiduciary duties by selecting investment options with allegedly excessive fees. *Hecker*, 556 F.3d at 589. The allegations in the complaint that formed the basis of the *Hecker* opinion are not materially distinguishable from those in the Amended Complaint here considered. Moreover, Defendant offers an additional basis for dismissing the claims against the Defendant members of the Compensation and Risk Oversight Committees of Exelon's Board of Directors ("Board Defendants"); defendants of this status were not present in *Hecker*.

Plaintiffs' attempts to distinguish *Hecker* from this case fail. In both cases, the issue is whether a defendant "violated its fiduciary duty by selecting investment options with excessive fees." *Hecker*, 556 F.3d at 586. As in *Hecker*, the gist of the claim here is that these expense ratios were "unreasonable and excessive." *Hecker*, 556 F.3d at 579. Further, in both *Hecker* and this case, plan participants were informed of the total fee for each fund and "were free to direct their dollars to lower cost funds . . . ." *Hecker*, 556 F.3d at 585. In both cases, the fees were structured as a revenue-sharing system, where a portion of the fee was paid to the company that provided recordkeeping and other administrative services to the plan. *Hecker*, 556 F.3d at 588. The plan at issue in *Hecker* offered 25 retail investment funds with expense ratios, ranging from .07% to just over 1%, a company stock fund, and access to a brokerage account. *Hecker*, 556 F.3d at 586. The Plan here offered 19 investment funds with expense ratios, ranging from .03% to .96%, plus a company stock fund. Indeed, Plaintiffs conceded that the Plan "provided mutual

funds with expense ratios within the range at issue in *Hecker*. In both cases, the funds available to plan participants were available on the open market for the same fee. *Hecker*, 556 F.3d at 579. Additionally, both plans provided the total fees of each fund to the plan participants and referred them to publicly available prospectuses for a breakdown of the total fee. *Hecker*, 556 F.3d at 585.

Although Plaintiffs cite language from the order denying rehearing in an attempt to distinguish *Hecker*, the particular quote is taken out of context. Specifically, Plaintiffs point to the statement that the panel's "opinion was tethered closely to the facts before the court" and concludes that *Hecker* cannot control this case. *Hecker*, 569 F.3d at 711. However, that quote referred to the Seventh Circuit's alternate holding regarding ERISA's § 404(c) safe-harbor defense, which is not at issue here. (*Id.*)

In *Hecker*, the Seventh Circuit held that the plan at issue did not violate any fiduciary duty because it "offered a sufficient mix of investments for [its] participants." 556 F.3d at 586. Plaintiffs contend that this holding in *Hecker* does not apply to this case because Plaintiffs do not claim that Defendants breached their fiduciary duties by failing to provide an acceptable array of investment vehicles. Specifically, they argue that Defendants breached their duty by "selecting investment options that were far more expensive than what Defendants could have obtained for the same investment management services." However, as mentioned above, the *Hecker* court noted that "[t]he fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." 556 F.3d at 586. As such, Plaintiffs' attempt to factually distinguish *Hecker* from this case fails.

Plaintiff further contends that three specific changes to the Amended Complaint distinguish this case from *Hecker*.

*Hecker Addressed All Mutual Fund Fees, Not Just Investment Management Fees*

Plaintiffs first try to distinguish *Hecker* by splitting the expense ratios at issue into their two component parts: administrative fees and investment management fees. Specifically, Plaintiffs claim that "*Hecker* addressed only investment management fees and did not address the reasonableness of administrative fees, which is one of the claims in this case." However, both components of the expense ratios were also at issue in *Hecker*. 556 F.3d at 578. Indeed, the court noted that the expense ratios at issue were divided between the "cost of managing the funds" and the "cost of administering [defendant's] 401(k) plans." (*Id.*) Additionally, the court stated that "the total fee . . . is the critical figure . . . ." (*Id.*) Because both administrative and investment management fees were at issue in this case and *Hecker*, Plaintiffs' attempt to distinguish *Hecker* on this ground fails.

*Hecker Does Not Require 401(k) Plans to Offer only "Wholesale" Funds*

Plaintiffs further argue that the Amended Complaint goes far beyond merely pleading that Defendants accepted retail, instead of wholesale or institutional, fees and specifically alleges that Defendants "failed to obtain any additional (much less commensurate) benefits to the participants from the high retail mutual fund fees." However, the "additional benefits" Plaintiffs refer to can only be interpreted as the additional benefits associated with wholesale fees. Indeed, the Seventh Circuit noted that the allegation that a plan accepts "retail" fees and does not negotiate supposedly lower "wholesale" fees "is not enough, in the context of these plans, to state a claim . . . ." *Hecker*, 569 F.3d at 711. Further, the court noted that "nothing in the statute

requires plan fiduciaries to include any mix of investment vehicles in their plan." *Hecker*, 556 F.3d at 586.

In *Hecker*, the plan at issue offered only retail funds. (*Id.*) Here, the Plan offered both retail and wholesale funds. Accordingly, participants in the Plan had an even greater opportunity than the plaintiffs in *Hecker* to "direct their dollars to lower-cost funds . . . ." 556 F.3d at 585. Thus, this case satisfies the conditions set forth in *Hecker*. Indeed, Plaintiffs make no claims alleging the funds the Plan offered were "unsound or reckless." *Hecker*, 569 F.3d at 711. Essentially, Plaintiffs attempt to distinguish the Amended Complaint with a claim that focuses on the theory that the Plan could have found less expensive funds with more benefits. *Hecker* expressly rejected a claim based on this theory. 569 F.3d at 711.

Additionally, Plaintiffs' claim indicates that *Hecker* requires that 401(k) plans negotiate a type of "wholesale" fee schedule by obtaining extra services. However, the *Hecker* opinion offers no support for this proposition. Moreover, Defendants set forth a list of additional services provided to Plan participants that were not available to the general public. Accordingly, Plaintiffs' attempt to distinguish *Hecker* on this ground fails.

*Asset-Based Fee Schedules Are Permissible Under Hecker*

Plaintiffs finally attempt to distinguish *Hecker* on the ground that the Plan permitted asset-based fees rather than per-participant fees. Asset-based fees increase as the assets in the plan increase, whereas per-participant fees grow as the number of participants in the plan grows. However, the *Hecker* court expressly approved of a plan which "calculated [fees] as a percentage of assets the investor placed with it." 556 F.3d at 578. Accordingly, asset-based fee schedules are permissible under *Hecker*.

Plaintiff further refines this claim by suggesting that Defendants interpret *Hecker* as creating a "safe harbor" range of acceptable fees that would control all cases in all circumstances. Instead, Defendants counter that *Hecker* controls *this* case because Plaintiffs' claims are indistinguishable from those in *Hecker*. Indeed, the allegations in this case provide stronger support for dismissal on the pleadings based on the *Hecker* opinion than the allegations considered in *Hecker*.[1]

*Plaintiffs Fail to State a Claim Against the Board Defendants*

Defendants also offer an independent basis for dismissing the claims against the Compensation and Risk Oversight Committees of Exelon's Board of Directors (again, "Board Defendants"). Specifically, Defendants argue that "Plaintiffs have failed to allege that the Board Defendants had any involvement in the selection of Plan investments or service providers. The court in *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989), indicated that a committee can be named as a defendant in an ERISA action. Moreover, an entity is a fiduciary to the extent it exercises any discretionary authority or control over plan management, exercises any authority or control over management or disposition of plan assets, or has any discretionary authority or responsibility in the administration of a plan. 29 U.S.C. § 1002(21)(A). Further, appointing and removing administrators of a plan is a fiduciary function that carries with it the duty to "monitor appropriately the administrators' actions." *Leigh v. Engle*, 727 F.2d 113, 134-35 (7th Cir. 1984).

Here, Plaintiffs allege that the Compensation Committee was responsible for appointing, monitoring, and removing the Plan Administrator and that the Risk Oversight Committee was

[1] As Defendants point out, even if *Hecker* were read to create a range of acceptable fees, the fees from the Plan fell within the same range as those in *Hecker*. As previously mentioned, the fees here are slightly *lower* than the expense ratios upheld in *Hecker*.

responsible for appointing, monitoring, and removing the members of the Investment Committee.[2] Plaintiffs allege that these committees "failed to properly exercise their powers of appointment and oversight and to take reasonable steps to remedy fiduciary breaches of which they were aware or should have been aware." However, Plaintiffs never allege anything beyond these legal conclusions, and "mere conclusory statements" are not enough to survive a motion to dismiss. *Ashcroft*, 129 S. Ct. at 1949. Accordingly, Plaintiffs fail to state a claim against the Board Defendants.

The allegations set forth in the Amended Complaint are not sufficient to survive a motion to dismiss. In sum, *Hecker* is not factually distinguishable from this case and is controlling here. Moreover, Plaintiffs' attempts to distinguish *Hecker* in the Amended Complaint fail. Additionally, Plaintiffs fail to state a claim against the Board Defendants. For these reasons, Plaintiffs' Amended Complaint fails to state a cognizable claim.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is granted.

Date: December 9, 2009

JOHN W. DARRAH
United States District Court Judge

[2] The Investment Committee was a named fiduciary for Plan Investments.